UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>   Plaintiff,<br><br>   v.<br><br>ALFONZO WILLIAMS, et al<br><br>   Defendant. | Case No. 13-cr-00764-WHO<br><br>**ORDER REGARDING DISCOVERY MOTIONS HEARD ON JANUARY 23, 2015**<br><br>Re: Dkt. Nos. 189, 216, 218, 221, 222, 224, 225, 226, 228, 230, 231, 233, 235, 236, 238 |

## INTRODUCTION

I held the second of the three sets of discovery hearings requested by the parties on January 23, 2015. *See* Dkt. No. 278 (criminal minutes). Six separate motions were brought by various defendants (Dkt. Nos. 216, 218, 221, 222, 224, 225), joined by others, (Dkt. Nos. 226, 228, 230, 231, 233, 235, 236, 238), and the San Francisco Police Department brought a motion to quash (Dkt. No. 189). The government continues to represent that it has produced all discovery other than that protected by the Jencks Act, and defendants continue to complain about the paucity of evidence provided thus far other than the pole camera videos that will take a long time to review. Many of the motions raised a generalized need to obtain additional evidence that the government agrees to produce, just not at such an "early" stage of the proceedings without a trial date set. The government's concerns regarding timing and witness safety are legitimate, as are the defendants' needs to know the evidence they will face at trial.

The way to break this logjam is to set a realistic trial date, and dates of disclosure pegged from that date. I direct the parties to meet and confer to propose a trial date and case management schedule leading up to the trial, and to file a Joint Statement on or before March 27, 2015 that either sets forth an agreed upon schedule or competing schedules. In the event of disagreement, it

would be helpful if the parties would cite other scheduling orders in this District that tend to justify their positions. Because of the number of defendants and the Department of Justice's need to review whether to seek the death penalty for defendants Elmore and Heard, it is unlikely that I will try everyone together. Therefore, in the Joint Statement the parties should also present an agreed upon proposal, or conflicting proposals, regarding the appropriate time to group the defendants for trial and the composition of any group.

At past hearings, the defendants have identified various structural issues that made accessing the discovery provided by the government difficult. I have attempted to address those issues by entry of the Initial Protective Order, allowing purchase of MP3 players, facilitating the review of transfer requests to the San Francisco County Jail so that discovery material could be more readily reviewed by computer, and housing discovery materials at Glen Dyer now that the *United States v. Ortiz, No. CR 12-00119 SI,* materials are being moved, among other things. If any structural issues remain that are impeding the defendants' necessary review of the discovery, I expect that the defendants will promptly bring it to my attention.

Along with this Order, I am entering a Preservation Order for the reasons described on page 4, and a Heightened Protective Order, described on page 6. Although at the moment the latter order involves only one document for review by one defendant's counsel, it is my expectation that it will be more widely used as documents are unredacted closer to trial.

I.  **WILLIAMS'S MOTION FOR DISCOVERY (Dkt. No. 225)**

Williams's motion sought six categories of discovery, and was joined by all defendants. The government agreed to provide much of what was identified. In accordance with the agreement of counsel, I ORDER that the government provide promptly on a rolling basis all recorded statements of the defendants, all logs of surveillance of the residence, and all wiretap evidence concerning the defendants to the extent it has not already done so.

In addition, the government agreed to provide the defendants with the dates certain for racketeering acts that were not charged, but at a later time tied to the trial date. The government likewise agreed to provide its expert disclosures, summaries and relevant past expert testimony at some point after the trial date is set. I will set these dates in the Case Management Order after the

April 3, 2015 hearing.

Defendants also seek all statements by individuals whom the government does not intend to call as witnesses that reference Williams and/or the gang(s) in which he is alleged to have participated. The government agrees that it is required to provide individuals' statements concerning the defendants or Central Divis Playas if the statements are material to the defense, even if it decides not to call those individuals as witnesses. But the government argues that it has no obligation to disclose statements of other people whom they interview and decide not to call.

Both sides argue that *United States v Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999) supports their positions. In a thoughtful opinion, that court held that *Brady* required pre-trial disclosure of exculpatory information that is either admissible or is reasonably likely to lead to admissible evidence, but not disclosure of information that merely helps the defendant with trial strategy. The court required that the prosecutors produce all proffers from an accomplice witness with a leniency agreement.

Here, I heard both the defendants' generalized concerns that the government will not correctly identify statements likely to lead to admissible evidence, and the government's assertion that it knows its *Brady* obligations. The defendants' request, as presently drafted, is overbroad as it includes statements by anyone unfamiliar with the CDP, whether or not he or she is in a position to know of the CDP's existence. A narrower request informed by the discovery in this case may be consistent with *Sudikoff*, so I DENY this part of Williams's motion without prejudice.

The government also objects to providing "all material relevant to gang expert opinion" that its experts review in arriving at their opinions. The parties cited *Paradis v. Arave (II)*, 240 F. 3d 1169, 1178-80 (9th Cir. 2001), where the government failed to provide notes by a pathologist that should have been disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963). Counsel for Williams stressed the importance of the production of gang intelligence information and their skepticism that the government has a sufficiently expansive view of its obligations to obtain and produce it. It is premature to reach this issue since gang experts have not been designated, let alone disclosed their opinions. As currently drafted and at this stage of the discovery, the request is overbroad and it is DENIED without prejudice. I will not make discovery rulings in a vacuum.

3

**II.     WILLIAMS'S MOTION TO PRESERVE DOCUMENTS (Dkt. No. 216)**

The government did not oppose Williams's motion to preserve evidence. It is obviously critical that all relevant documents be preserved. Williams provided a proposed preservation order. I directed the parties to meet and confer and provide either an agreed proposed order or competing versions by January 30, 2015. I assume, since nothing has been filed since the hearing, that the proposed Preservation Order is acceptable. With a slight modification in the first paragraph, I will enter it.

**III.    HEARD'S MOTION UNDER LOCAL RULE 16-1(c) (Dkt. No. 221)**

The government's threshold argument against Heard's motion is that Local Rule 16-1(c) contradicts established laws and rules and should not be enforced. Judge Alsup rejected this argument in *United States v. Cerna*, Case No. 08-cr-0730 (N.D. Cal. December 17, 2009) (Dkt. No. 998, revised order setting final schedule for all defendants at 3:18-4:2) ("*Cerna*"). I agree with Judge Alsup. The Local Rule merely implements the court's case management authority as described in detail in *United States v. W.R. Grace*, 526 F.3d 499, 511 (9th Cir. 2008), and I will apply it when it is appropriate to do so.

As to the substance of the motion, the government agrees to provide electronic surveillance, 404(b) evidence of other wrongs, and co-conspirators statements, and will identify witnesses who are informants, but much closer to trial. Counsel for Heard provided a lengthy brief explaining the importance of this information, and indicated that this case is unique in the lack of discovery provided by the government, given the seriousness of the charges. Dkt. No. 265. He warned that it will be hard to set a realistic trial date until the requested discovery is disclosed. I acknowledge that concern and further recognize that given the seriousness of the charges and the need to develop mitigation presentations, some defendants may need more time than others to be ready for trial. My aim is to set realistic trial and disclosure dates so that the parties have sufficient time to investigate this matter effectively and prepare for trial.

**IV.     HARDING'S MOTION FOR A BILL OF PARTICULARS (Dkt. No. 224)**

Harding asks for a bill of particulars because there is very little in the indictment that discusses his role in the CDP, other than that he threatened a witness and stole an iPod. He is

4

particularly interested in knowing why he is included in Special Sentencing Factor Number 1: Conspiracy to Commit Murder. The government responds that it has no obligation to provide a bill of particulars, that it has provided Harding with all of the necessary discovery concerning his involvement in the CDP, including reference to his tattoos and declared membership, and that he is not being charged with conspiracy to commit murder, but rather as a member of a gang that committed murders as an object of the conspiracy.

In *Cerna*, Judge Alsup ordered a limited bill of particulars clarifying when each defendant was alleged to have joined the conspiracy, specific information about meetings to discuss the subject murders, and enough information to fairly apprise each defendant of the incidents with which he is being charged. *Cerna*, at 4:2-5:6. Harding has the type of information required in *Cerna*. The Second Superseding Indictment provides the dates and allegations regarding the two specific incidents for which he is charged in paragraphs 17.w and x. As a result, Harding has notice of the two charges against him. His motion for a bill of particulars is DENIED at this time.

Harding also asked to file a motion for severance. I have received and denied two motions for severance from other defendants for essentially the same reasons. Dkt. Nos. 120, 166. Until the trial date is set and groupings for trial are determined, I am very unlikely to consider severance of any defendant based on the arguments previously made. While I indicated at the hearing that Harding could file a motion for severance if he wanted, I suggest that he and the other defendants wait at least until the trial date is set and the groupings of defendants has been discussed.

**V.   ELMORE'S REQUEST FOR UNREDACTED DISCOVERY (Dkt. No. 218)**

Elmore, who currently faces the death penalty for the charges against him, seeks an unredacted police incident report from Richmond, California dated a year after he was incarcerated. He wants to identify the witness involved in a stop that resulted in the recovery of the gun used in one of the murders for which Elmore is charged in this case. He argues that this incident may be critical to his trial defense and mitigation efforts. The name of the witness, his photo, and most of the report are not redacted. Elmore asserts that the government can make no plausible arguments regarding witness safety in light of the publication of the witness's photo and name. He complains that he cannot locate the witness or even the exact location of the stop

because of the government's redactions.

Somewhat contradictorily, the government asserts both that it has provided identifying information for the witness and that it should not be obligated to provide more information that actually allows Elmore to find the witness. It argues that witness safety is paramount, and repeated its general concerns on this subject at the hearing. I invited the government to file any particularized concerns about this report *in camera* and *ex parte*. It did so, and that filing shows why the government is concerned.

The defense cannot be precluded from investigating this matter, and for the reasons urged by Elmore's counsel it is appropriate that he receive an unredacted version of the report now. Yet the interest of public safety is paramount. I have to balance these competing concerns. With this in mind, I will allow Elmore's counsel access to this report as Heightened Protective Discovery, pursuant to a Heightened Protective Order that I am entering separately. It is modeled on the one entered by Judge Illston in *United States v. Ortiz*, 2013 WL 450199, 2013 U.S. Dist. LEXIS 16218 (N.D. Cal. 2013). At the moment, the only document covered under this Heightened Protective Order is the police report, described above, and only Elmore's counsel and his staff will have access to it in its unredacted form. The government may choose to designate other documents "Heightened Protected Discovery" in accordance with that Order's provisions, and during the course of pre-trial proceedings I may require that additional unredacted documents be produced in accordance with that Order.

In addition, I admonish all counsel to adhere strictly to the Initial Protective Order. For example, in open court Elmore's counsel named someone whose name should have been kept confidential. In briefing, counsel for another defendant identified another individual whose name should have been kept confidential. I have no doubt that these were inadvertent violations of the Initial Protective Order. But let me be clear: the terms of the Initial Protective Order must be strictly adhered to.

**VI.    ROBESON'S MOTION TO SUPPRESS OR PRODUCE (Dkt. No. 222)**

Robeson seeks to suppress, or have the government produce now, up to 30 text messages between himself and an undercover agent between October 1 and 7, 2012. Robeson faces a charge

1   of attempting to entice and persuade a minor to engage in prostitution, a crime which carries a
2   mandatory minimum term of 10 years. That offense is based on his interactions with an
3   undercover officer who posed as a 16-year-old. Some of the texts at issue have been lost.
4   Robeson seeks an evidentiary hearing because the first communication between him and the
5   undercover agent about the agent's age, an important communication that might bear on whether
6   Robeson knew that the agent was a minor (for purposes of their communications), may be among
7   the texts that have been lost. Robeson also argues that the timing and content of the missing texts
8   may be relevant to a defense of entrapment. Moreover, he points out that his first contact with the
9   agent through Facebook was in October 2012, yet the government did not preserve the agent's
10  Facebook profile, comments and posts until September 2013. He claims that there is no evidence
11  of how the agent presented herself to him at the outset of their relationship. Consequently, he
12  seeks an order excluding any of the missing texts (if they are recovered later) and requiring a
13  hearing on the destruction of the texts themselves.
14       The government concedes that it lost the texts and explained what happened. It was, at a
15  minimum, negligent. The government contends that there was nothing substantive or exculpatory
16  in those texts, though without the texts only Elmore and the agent could possibly know for sure.
17  The government has provided reports from the agent describing her interactions with Elmore
18  during the relevant time period. In order to negate any inference of intentional wrongdoing, the
19  government points to its successful efforts to recover and produce twelve other missing texts and
20  to a plethora of text messages, MMS exchanges, Facebook exchanges, photographs,
21  myRedBook.com posting, as well as the recording of a telephone call on October 5, 2013. It
22  argues that the evidence against Robeson of soliciting a minor is extensive, consistent and
23  damning. It also states that the Facebook information downloaded in September 2013 included all
24  prior communications between the agent and Robeson, and that the affidavit of the agent
25  establishes that her Facebook profile did not change between October 2012 and September 2013,
26  because she was always posing on Facebook as an underage prostitute.
27       Robeson wants production of all communications regarding the agent's age and
28  confirmation that the texts were destroyed. The government asserts that all communications in its

7

possession between the agent and Robeson have been produced and admits that up to 30 texts were destroyed. I have no reason to doubt this. But if it turns out that the missing texts can be found, I will not preclude their use without first knowing the circumstances of their loss and recovery.

Robeson also seeks all law enforcement notes regarding the agent posing as a minor. Notes regarding how the agent was portrayed on Facebook throughout the relevant time period are relevant to Robeson's defense of sentencing entrapment. Contrary to the government's argument at the hearing, that defense is an issue for the jury, not for me at sentencing. *United States v. Cortes*, 757 F. 3d 850, 861 (9th Cir. 2014). Since the government was not aware of its *Brady* obligations with respect to this defense, I ORDER the government to search law enforcement files for *Brady* material related to the defense of sentencing entrapment.

Robeson seeks all communications between the agent and any third party concerning the agent's age, whether on social media or not and whether the communications were public or private. This request is overbroad and would endanger other investigations the agent is pursuing. What is relevant is what the agent communicated to Robeson, directly or via her Facebook account.

Robeson also seeks discovery regarding Robeson's involvement in CDP. The government responds that it has provided all pertinent discovery except for Jencks Act material. I will DENY this request without prejudice, under the assumption that any additional pertinent material will be produced pursuant to disclosure deadlines that I set after the April 3, 2015 hearing.

Robeson also wants all Facebook Comments posts from October 2012 forward. The government contends that they have been produced. The government states that it has provided all communications between the agent and Robeson in its possession.

Robeson is entitled at trial to explore how the government lost the emails and failed to preserve the Facebook page from October 2012. Because of the amount of discovery that has been provided concerning communications between Robeson and the agent, and the likely inadvertence of the destruction of the 30 texts, I will not hold a hearing at this time, as Robeson requested, to determine if the government's failures to maintain the texts or the October 2012

8

Facebook page of the agent warrants additional relief, such as dismissal of the indictment or suppression of the evidence. These gaps in the evidence do not mean that the government has failed to disclose "material exculpatory evidence" sufficient to constitute a denial of Robeson's due process rights. *See Arizona v Youngblood*, 488 US 51, 57 (1988). The missing texts may be potentially exculpatory but there is no evidence that they are apparently exculpatory or that they were destroyed in bad faith. *See California v. Trombetta*, 467 US 479 (1984).

### VII. SFPD'S MOTION TO QUASH (Dkt. No. 189)

Robeson subpoenaed *Henthorn* material from SFPD. In response, SFPD provided to the government, and the government provided to me, documents that it did not believe were within the scope of the subpoena but which, out of an abundance of caution, it asked me to review. Those documents did not fall within the subpoena and need not be produced.

Robeson also seeks documents showing "pre-existing contacts" between him and Officers Angalet and Burrows. In addition to raising objections as to relevance and improper discovery, SFPD described the burden of attempting to locate any such documents, if they exist. While these documents could be relevant, the burden of locating them is significant. After weighing the burden of discovery against the uncertain relevancy of the documents, I will not require SFPD to produce documents showing "pre-existing contacts." SFPD's motion to quash is GRANTED.

### CONCLUSION

- The parties shall meet and confer to propose a trial date and case management schedule leading up to the trial, and file a Joint Statement on or before March 27, 2015 that either sets forth an agreed upon schedule or competing schedules.

- Williams's motion for discovery is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE as discussed above. Dkt. No. 225.

- Williams's motion to preserve documents is GRANTED. Dkt. No. 216. A Preservation Order is entered concurrent with this order.

- Heard's motion under Local Rule 16-1(c) is DENIED WITHOUT PREJUDICE as premature. Dkt. No. 221. As set forth above, my aim is to set realistic trial and disclosure dates that ensure sufficient time to complete the necessary discovery.

- Harding's motion for a bill of particulars is DENIED. Dkt. No. 224.

- Elmore's request for unredacted discovery is GRANTED, Dkt. No. 218, subject to the

Heightened Protective Order issued concurrent with this order.

- Robeson's motion to suppress or produce is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE as described above. Dkt. No. 222.

- The parties' motions for joinder are GRANTED. Dkt. Nos. 226, 228, 230, 231, 233, 235, 236, 238.

- SFPD's motion to quash is GRANTED. Dkt. No. 189.

It is my expectation that between now and the filing of the Joint Statement on March 27, 2015, the parties will have meaningful discussions concerning a realistic timetable for the production of the potentially discoverable information described in the motions to date so that the defendants may effectively prepare their cases for trial. The case schedule will be a primary focus of the hearing on April 3, 2015.

**IT IS SO ORDERED**.

Dated: February 13, 2015

WILLIAM H. ORRICK
United States District Judge