UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALFONZO WILLIAMS, et al,<br><br>　　　　Defendants. | Case No. 13-cr-00764-WHO-1<br><br>**ORDER GRANTING DEFENDANTS ELMORE'S AND HEARD'S MOTIONS FOR BILLS OF PARTICULARS; GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION OF DISCLOSURE ORDER**<br><br>Re: Dkt. No. 356, 357, 358 |

## INTRODUCTION

This Order addresses defendants Reginald Elmore's and Charles Heard's motion for a bill of particulars, Dkt. Nos. 357, 358, and the government's motion for reconsideration of my order requiring the government to unredact witness names and identifying information from incident reports prepared by the San Francisco Police Department, Dkt. No. 356, on which I heard argument on June 4, 2015. For the reasons discussed below, I GRANT the motion for a bill of particulars because Elmore and Heard are entitled to know the government's factual theory for their involvement in the murders for which they are charged. I GRANT the government's motion for reconsideration because the SFPD's incident reports are not discoverable under controlling Ninth Circuit law.

## I.　ELMORE'S AND HEARD'S MOTION FOR BILLS OF PARTICULARS [Dkt. Nos. 357-58]

Elmore and Heard are charged with murder in aid of racketeering for the murders of Andre Helton and Isaiah Turner. Elmore moves for an order directing the government to file a bill of particulars, arguing that the indictment and discovery produced in this case does not indicate his alleged involvement in the murders. Heard has joined in Elmore's motion.

### A.　Legal standard

The indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The court "may direct the

government to file a bill of particulars." Fed. R. Crim. P. 7(f). "A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense. It is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (citations omitted). The district court has "very broad discretion" in deciding whether a bill of particulars is warranted. *Will v. United States*, 389 U.S. 90, 99 (1967).

**B. Discussion**

Count Six of the second superseding indictment alleges that:

> On or about August 14, 2008, in the Northern District of California, as consideration for the receipt of, and as consideration for a promise or agreement to pay, anything of pecuniary value from the CDP enterprise, and for the purpose of gaining entrance to and maintaining and increasing position in CDP, an enterprise engaged in racketeering activity, the defendants,
>
> REGINALD ELMORE, a/k/a "Fat Reg," and
>
> CHARLES HEARD, a/k/a "Cheese,"
>
> each aided and abetted by the other, unlawfully and knowingly did murder Andre Helton, in violation of California Penal Code Sections 187, 188, 189, and 31-33.
>
> All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

Docket No. 139 at 17 (second superseding indictment). Count Seven contains identical allegations with respect to the murder of Isaiah Turner. *Id*. at 17-18. Count Eight alleges that Elmore and Heard violated 18 U.S.C. § 924(j)(1) and (2) by their use and possession of a firearm in the murders of Helton and Turner.

Aside from charging that the murders occurred "[o]n or about August 14, 2008," the second superseding indictment provides no factual allegations regarding the murders. Elmore and Heard contend, and the government does not dispute, that the discovery produced in this matter does not shed meaningful light on their alleged involvement in the murders, including whether they are charged as principal or aider or abettor; whether they are alleged to have been a shooter or an accomplice; and whether they are alleged to have personally possessed, brandished, or used a

1   firearm in connection with the charged offenses.

2   Accordingly, Elmore and Heard are not aware of the government's factual theory for their
3   prosecution for the murders of Helton and Turner. They are entitled to this information. *See, e.g.,*
4   *United States v. Alvarez*, 14-cr-00120 EMC (NC), 2014 WL 7240670, at *3 (N.D. Cal. Dec. 19,
5   2014) ("the government must specify its theory of prosecution as to each defendant. Are they
6   principals, and if so, on what variant of principal liability will the government rely? Did they aid
7   others who actually killed or attempted to kill the victims? If so, the government must identify the
8   accomplices."); *United States v. Cerna*, 08-cr-0730 WHA, 2009 WL 2998929, at *4 (N.D. Cal.
9   Sept. 16, 2009) ("The government must specify whether defendant Herrera is charged as a
10  principal and, if so, on what variant (or variants) of principal liability the government will rely. If
11  he is charged with aiding others who actually killed the victim, the government should identify
12  those accomplices.").

13  At oral argument, after I announced my inclination to grant the motion for a bill of
14  particulars, counsel for the government stated that:

> I believe our evidence is going to support that Mr. Elmore pulled the trigger on the double homicide, and that Mr. Heard was a participant, possibly pulled the trigger on one of them, possibly present, possibly not present, but was involved in the homicide to set it up, at a minimum.

18  Later during the argument, counsel for Elmore indicated that the government's
19  representation satisfied part of the relief it sought, though Elmore continues to seek identification
20  of any alleged accomplices. In response, government counsel said, "Your Honor we've charged it.
21  We've charged at least one accomplice for each." There was no specific argument regarding
22  Count Eight.

23  Government counsel also argued that Elmore and Heard are legally liable for both murders,
24  whether as principals, aiders and abettors, or members of a conspiracy, and the government should
25  therefore not be limited to a legal theory of liability based on what it believes the evidence will
26  show. Counsel for Elmore agreed that the government's disclosure of its factual theory does not
27  foreclose it from seeking a verdict on theories of principal, aider and abettor, or conspiracy
28  liability. The parties are correct that the bill of particulars does not limit the legal theories under

3

which the government may seek to hold the defendants liable; it only relates to the factual theories of the defendants' involvement. *See, e.g., United States v. Diaz,* 05-cr-00167 WHA, 2006 WL 1833081, at *6 (N.D. Cal. June 30, 2006) (granting motion for bill of particulars to require government to describe defendant's alleged role in killing, but denying request to require government to disclose its legal theory); *see also Rose v. United States*, 149 F.2d 755, 758 (9th Cir. 1945) ("The purpose of a bill of particulars is to secure facts, not legal theories.").

For the reasons stated, Elmore's and Heard's motion for bills of particulars is GRANTED. The government is ordered to provide defendants Elmore and Heard bills of particulars within 30 days of this Order. Each bill of particulars shall include the governments' factual theory of the defendant's involvement in the murders of Helton and Turner, including whether he was a principal or aided others who committed the murders, whether he had accomplices, whether he actually or constructively possessed a firearm and whether he is alleged to have fired it.[1]

## II. GOVERNMENT'S MOTION FOR RECONSIDERATION OF DISCLOSURE ORDER [Dkt. No. 356]

On April 13, 2015, I granted Elmore's motion to compel the government to unredact civilians' names and identifying information from primary and supplemental incident reports prepared by the San Francisco Police Department regarding the homicides with which defendants Elmore and Heard are charged. Dkt. No. 352 at 3. The government moves for reconsideration of that order.

I ordered the government to unredact the civilians' names and identifying information because it seemed unlikely that the individuals named would be called as witnesses since none of the witnesses at issue reported seeing the shootings or identifying any perpetrator, and that any concerns of witness safety would be addressed by subjecting the disclosures to a heightened protective order.[2] This seemed particularly appropriate given the lack of discovery provided on

---

[1] As noted above, during oral argument, the government provided much of the information that I am now requiring it to provide through the bill of particulars.

[2] I should note that in its reply in support of its motion for reconsideration, the government indicated for the first time that it in fact intends to call several of the persons whose names are redacted in the reports at issue, a fact that would have changed my earlier analysis.

4

the government's factual theory of the case against Elmore and Heard, as discussed in Section I. However, I overstepped my authority because under the Ninth Circuit's controlling decision in *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), the incident reports are covered by Federal Rule of Criminal Procedure 16(a)(2), irrespective of the adequacy of safeguards addressing witness-safety concerns, and are therefore not discoverable. I accordingly grant the government's motion for reconsideration.

### A. Legal standard

Federal Rule of Criminal Procedure 16(a)(2) provides that defendants are not entitled to discovery of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). In *Fort*, the Ninth Circuit held that Rule 16(a)(2) applies to police reports created by a local police department prior to a federal prosecutor's involvement when they are turned over to the federal prosecutor for use in the federal investigation and prosecution of the same acts by the same people. *Fort*, 472 F.3d at 1119-20 ("Rule 16(a)(2) extends to the San Francisco police reports created prior to federal involvement but relinquished to federal prosecutors to support a unified prosecution of Defendants for the same criminal activity that was the subject of the local investigation."). The Ninth Circuit noted that "[its] interpretation of Rule 16(a)(2) applies regardless of the content of the non-disclosed inculpatory information and regardless of the potential effect of disclosure on witness safety." *Id*. at 1110 n.1.

### B. Discussion

In opposition to the motion for reconsideration, Elmore argues that the government's witness-safety concerns are overstated and that I am authorized under *United States v. W.R. Grace*, 526 F.3d 499, 503 (9th Cir. 2008) to compel the government to disclose witnesses at any time before trial. Elmore also argues that Rule 16(a)(2) only applies to the SFPD reports if the government asserts agency over the SFPD, but if it does, then the government is responsible for producing SFPD files which qualify as *Brady* material.[3]

---

[3] When this Order refers to *Brady* information, all information required by *Brady* and its progeny is included, including *Giglio* and *Henthorn* material.

          i.   *Fort* applies regardless of witness safety and is not limited by *W.R. Grace*

The government has legitimate concerns about witness safety in this case. I remain unconvinced that those concerns are implicated each time a name is mentioned in a discoverable document, no matter how tangential that person is to the case, or that these concerns cannot be addressed by a heightened protective order. But I am bound by *Fort*. Under that case, reports created by local police departments and turned over to the government[4] for prosecution of the same criminal activity are not discoverable by defendants, regardless of the presence or absence of witness-safety concerns. *See Fort*, 472 F.3d at 1110 n.1. The incident reports at issue were prepared by the SFPD in connection with its investigation into the murders of Mr. Turner and Mr. Helton. The reports were subsequently turned over to the government in connection with the government's prosecution of this matter. The government's prosecution relates to the same criminal activity that was the subject of the SFPD's investigation, i.e., the murders of Mr. Turner and Mr. Helton. The reports, including the portions identifying witnesses, therefore fall within Rule 16(a)(2) under the holding of *Fort* and are not discoverable.[5]

Elmore is correct that I am authorized under *United States v. W.R. Grace* to compel the government to disclose witnesses before trial. *See W.R. Grace*, 526 F.2d at 513. But *W.R. Grace* does not provide that I may compel the government to produce material otherwise covered by *Fort* and Rule 16(a)(2). Rather, by limiting the material that I may compel the government to produce, *Fort* limits the manner in which I may exercise my authority under *W.R. Grace* to compel the government to disclose its witnesses. For example, I cannot force the government to disclose its witnesses by producing police reports identifying those witnesses in violation of Rule 16(a)(2). At the same time, I am not prevented from compelling the government to disclose a witness's identity

---

[4] While federal prosecutor's offices and local law enforcement departments are both government agencies, this Order uses "government" to refer to the United States Attorney's Office.

[5] Elmore does not argue that the government waived its Rule 16(a)(2) protections by producing redacted versions of the reports. In *Fort*, the Ninth Circuit rejected such an argument, explaining that there was no waiver because the government did not "intentionally or voluntarily relinquish its rights under Rule 16(a)(2)," notwithstanding its disclosure of redacted versions. *Fort*, 472 F.3d at 1121. As in *Fort*, here the government has consistently asserted its right *not* to disclose the material under Rule 16(a)(2).

merely because that witness's identity is disclosed in a police report covered by Rule 16(a)(2), as long as the disclosure is compelled independently from the police report protected by Rule 16(a)(2).

Judges in the Ninth Circuit have recognized this interplay between *Fort* and *W.R. Grace.* For example, in *United States v. Feil*, 2010 WL 3834978, at *1 (N.D. Cal. Sept. 29, 2010), Judge Zimmerman cited *W.R. Grace* for the court's "authority to schedule the production of certain information to assure that the trial can proceed effectively." But he also noted that the government was not required to produce material coveted by *Fort*. *Id.*; *see also United States v. Vaughn*, 2008 WL 4615030, at *2 (E.D. Cal. Oct. 17, 2008) ("While the *Fort* case remains good authority for the fact that local police reports connected with a federal investigation need not be disclosed, the case cannot be viewed after *W.R. Grace* as one that limits the discretion of the court to order the disclosure of witness names/identifying material."). I have set the deadlines for witness disclosures and the date that redacted documents shall be provided in their unredacted form to defendants in the Order Setting Pre-Trial and Trial Schedule, Dkt. No. 353 at 4. With respect to the documents at issue, I cannot do more at this time.

    ii. <u>Applying Rule 16(a)(2) to SFPD reports does not trigger additional *Brady* obligations by the government</u>

Elmore argues that the government has necessarily asserted that the SFPD is its agent in order to trigger Rule 16(a)(2) and that, having done so, the government is responsible for producing the SFPD's files which qualify as *Brady* material. I am not convinced. As discussed below, Rule 16(a)(2) does not, in itself, trigger additional *Brady* or other disclosure obligations.[6] However, the government's cooperation with the SFPD, and access to its files, nonetheless impacts the government's *Brady* obligations.

---

[6] Elmore's argument that the government must affirmatively assert agency over the SFPD to trigger Rule 16(a)(2) is inconsistent with *Fort*. *Fort* held that Rule 16(a)(2) extends to local police reports created prior to federal involvement and turned over to federal prosecutors so long as the reports support a unified prosecution for the same criminal activity that was the subject of the local investigation; no formal assertion of agency was necessary. The government here asserts that "there is a single, unified prosecution of CDP and these defendants by the SFPD, FBI, and the United States Attorney's Office." Dkt. No. 372 at 8. That is sufficient under *Fort*.

*Fort* explicitly stated that "this appeal does not involve the government's disclosure obligations under *Brady v. Maryland* . . . or other disclosure rules." *Fort*, 472 F.3d at 1110; *see also id.* ("We review only the district court's determination that local police reports do not qualify for the Rule 16(a)(2) exemption and that they are, therefore, discoverable materials under Rule 16(a)(1)(E)"). The Ninth Circuit subsequently denied rehearing *en banc* in *Fort*. *United States v. Fort*, 478 F.3d 1099 (9th Cir. 2007). The concurrence in the denial of rehearing noted that *Fort* did not expand *Brady* or other disclosure obligations because *Fort* "establishes no principle of constructive possession" but only applies only to material actually known or possessed by the government. *Id.* at 1100. The concurrence emphasized that *Fort* was limited to "investigative reports created by state police officers and *turned over to federal prosecutors* to support a unified federal prosecution of defendants." *Id*. (emphasis added in concurrence) (quoting *Fort,* 472 F.3d at 1118). Accordingly, *Fort* does not, in itself, expand the government's *Brady* obligations.

However, as Judge Alsup noted in *United States v. Cerna*, 633 F. Supp. 2d 1053, 1059-60 (N.D. Cal. 2009), consistent with *Fort*, the government has *Brady* obligations with respect to local law enforcement agencies if the government has access to local police records for purposes of the government's prosecution.[7] Judge Alsup explained that:

> When state police gives a federal investigator access to its files for the purpose of pulling items of interest to a federal investigation, *Brady* requires that the prosecution team review as well for *Brady* materials within the same universe of files. In this instance, separate sovereignty no longer matters. The reason is that the state has invited the federal authorities into its file room and given access to the evidence. Once inside the stacks with permission to rummage about for prosecution evidence, the federal authorities must search for and retrieve defense evidence bearing on the same question. The same would hold if the access is only by mere requests, i.e., if the local police allow the federal prosecutor to make written or verbal requests for records searches to be conducted by local officers, then the federal prosecutor must ask for all information on the same subject, pro and con. This arises not because there is "agency" but because the federal prosecution team is given free access to retrieve information and the search must be even-handed as to the point of inquiry.

---

[7] The government also has *Brady* obligations with respect to local law enforcement agencies where it uses a state or local officer as a "lead investigating agent." *See Cerna*, 633 F. Supp. 2d at 1059 (citing *United States v. Price,* 566 F.3d 900 (9th Cir. 2009)). That is not the situation here.

*Id.* at 1060. That said, the government is not required "to scour the entirety of local police storerooms looking for defense evidence," even if the local police department offers the government greater access than it actually uses; "[i]t is enough that the federal prosecutor even-handedly seeks out defense evidence on the same point of actual inquiry." *Id*.

The government recognizes its obligation to look for *Brady* materials in the universe of SFPD files that it reviews. It states:

> In the course of preparing this case, as with most cases, the government has attempted to gather all materials from SFPD that are known to be relevant to the case, whether containing inculpatory or exculpatory information. The government will continue to search through the files of federal agencies and state agencies looking for, among other evidence, potential *Brady* information because that is how to thoroughly investigate and prosecute a case properly.

Dkt. No. 372 at 10. In addition, at oral argument, counsel for the government stated that if the government knows, or has reason to believe, that *Brady* material exists in the SFPD, it will ask for the material and turn it over to the defense.

I will hold the government to its representations. Its review of SFPD materials must be even-handed with respect to exculpatory and inculpatory material. The government must request all material from the SFPD which it knows or has reason to believe contains *Brady* material, and turn it over to the defense. But the government is not required to search for material which it has no reason to believe exists.

## CONCLUSION

Elmore's and Heard's motion for bills of particulars is GRANTED. Dkt. Nos. 357, 358. The government is ordered to provide defendants Elmore and Heard bills of particulars within 30 days of this Order. Each bill of particulars must include the government's factual theory of the defendant's involvement in the murders of Helton and Turner, including whether he was a principal or aided others who committed the murders, whether he had accomplices, whether he actually or constructively possessed a firearm, and whether he is alleged to have fired it.

The government's motion for reconsideration is GRANTED. Dkt. No. 356. The government is not required to unredact witness names and identifying information from the SFPD

9

1 | incident reports at issue.
2 | **IT IS SO ORDERED**.
3 | Dated: June 19, 2015
4 | _____
5 | WILLIAM H. ORRICK
   | United States District Judge