UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br>   v.<br>ALFONZO WILLIAMS,<br>       Defendant. | Case No. 13-cr-00764-WHO-1<br>**ORDER REGARDING SUPPRESSION MOTIONS HEARD ON DECEMBER 17, 2015**<br>Re: Dkt. Nos. 572, 577, 578, 589 |

On December 17, 2015, I heard argument on a variety of motions after providing the parties with my tentative rulings. Dkt. Nos. 733, 742. On December 30, 2015, I issued an order regarding the discovery-related and severance motions heard on December 17, 2015. Dkt. No. 758. Below are my final rulings on the suppression motions.[1]

### I. HARDING'S MOTION TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT (DKT. NO. 577)

Defendant Harding moves to suppress statements he made concerning the robbery of an iPod on a MUNI bus on January 15, 2010. On January 21, 2010, the robbery victim described the person who committed the robbery as a black male, approximately 25 years old, 6'2", approximately 200 lbs., wearing a black hoodie sweatshirt with the hood pulled over his head. The victim said that the suspect had a tattoo in block lettering on his left hand that read "Chedda Boy." SFPD Sergeant Murray showed the victim a six-pack photo array, and the victim picked Harding as one of two possible suspects. The victim was then shown a photograph of Harding's left hand tattoo, which the victim positively identified.

On January 22, 2010, Murray ordered the detention of Harding, who was located,

---

[1] I am not ruling on Antonio Gilton's motion to suppress regarding cell phone data, on which I allowed additional briefing, or on Barry Gilton's and Robeson's motions to suppress booking statements, on which I am deferring ruling until the pending interlocutory appeal is decided.

handcuffed and taken into custody in front of 1728 Turk Street at 1:17 p.m. He was driven to Northern station. At 3:55 p.m., he was Mirandized and his interrogation began. He was told that he was under arrest at 4:42 p.m. Harding characterizes his detention prior to 4:42 p.m. as an arrest and argues that the officers lacked a warrant or probable cause. The government responds that no arrest occurred until the conclusion of his interview and that, in any event, there was probable cause to arrest him when he was taken into custody.

I assume without deciding that Harding was under arrest prior to his interrogation but agree with the government that there was probable cause to arrest Harding.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Here, while the victim described a person somewhat older and smaller than Harding, when looking at the six-pack photo array he narrowed the possible suspects to two people, one of whom was Harding. What gave the officers probable cause to arrest, of course, was Harding's unique "Chedda Boy" tattoo on his left hand, a unique mark that the victim initially described during his interview and then identified in the photograph. The tattoo identification, coupled with the narrowing of suspects through the photo array, provided reasonably trustworthy information on which to arrest Harding.

**II.   HARDING'S MOTION TO SUPPRESS EVIDENCE FROM THE AUGUST 10, 2011 TELEPHONE SEARCH (DKT. NO. 578)**

On August 8, 2011, Harding was arrested in connection with an automobile burglary. His cell phone was seized and downloaded two days later. He argues that since the search of the cell phone was not a search incident to arrest, a warrant was necessary, and since the officers failed to obtain one and no exceptions to the warrant requirement apply, the search should be suppressed.

Harding's motion is DENIED. He was on probation at the time of his arrest as a result of a felony conviction for robbery, subject to a warrantless search condition as to his "person, property, premises and vehicle, any time of the day or night, with or without probable cause, by any peace, parole or probation officer." Millspaugh Decl. Ex. A (Dkt. No. 678-2). Officer Elleff's report

documents Harding as being on active felony probation. Sergeant Chorley, a member of the Gang Task Force notified by Elleff of the arrest, confirmed in his declaration that he also knew that Harding was on active probation with a warrantless search condition at the time.[2] The police clearly had sufficient reason to believe that the searched cell phone was Harding's, because Harding had previously admitted that the cell phone was his. *Cf. United States v. Bolivar*, 670 F.3d 1091, 1095 (9th Cir. 2012).

I am not sure that this case falls within the scope of the Ninth Circuit's decision in *United States v. King*, 736 F.3d 805, 809 (9th Cir. 2013), given the difference in the nature of the underlying convictions (robbery here, as opposed to the "serious and intimate nature" of the conviction in *King* for willful infliction of corporal injury on a cohabitant). If *King* applies, then no level of suspicion would have been necessary to conduct the search. *See id.* at 810 (holding that a "suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment"). If this case is not controlled by *King*, then reasonable suspicion that Harding was involved in criminal activity would have been required. *See USA v. Floyd*, 76 F. Supp. 3d 976, 980 (N.D. Cal. 2014); *United States v. Gomez*, No. 13-cr-00282-PJH, 2014 WL 1089288, at *14-15 (N.D. Cal. Mar. 14, 2014); *see also United States v. Knights*, 534 U.S. 112, 121-22 (2001). Given that Harding had just been arrested for an automobile burglary and for actively participating in a criminal street gang (Cal. Penal Code § 186.22(a)) while on probation for robbery, I am satisfied that reasonable suspicion existed here.

While there is a difference in the legitimate expectation of privacy to which a parolee and a probationer is entitled, Harding offers no case that distinguishes between the two in the context of a delayed search following an arrest; instead, he relies on authorities concerning individuals whose privacy interests had not been impaired by conditions imposed as a result of a prior conviction.

---

[2] Harding argues that the basis of Chorley's assertion is "thin." At the time Chorley downloaded the phone, he was a Sergeant with the SFPD assigned to the Gang Task Force. Chorley Decl. ¶ 5 (Dkt No 678-1). He had been notified that four CDP members, including Harding, had been arrested (by an officer who included Harding's probation status in his police report). *Id.* ¶ 6. Chorley attempted to interview them. *Id.* ¶ 7. Given those facts, it is not at all surprising that Chorley knew that Harding was on active probation with a warrantless search condition. *Id.* ¶ 8.

The parole context provides a closer comparison. I find that the two-day delay in downloading the phone was reasonable for a probation search. *See United States v. Johnson*, No. 14-cr-00412-TEH, 2015 WL 4776096, at *4-5 (N.D. Cal. Aug. 13, 2015) (three-day delay in search of a phone pursuant to a parole search condition not unreasonable). The police were entitled to search Harding's phone.

### III.   ROBESON'S MOTION TO SUPPRESS EVIDENCE FROM MARCH 18, 2004 (DKT. NO. 572)

At 4:35 a.m. on March 18, 2004, officers observed a Mitsubishi sitting for a minute in the right turn lane at a four-way flashing red light on Hyde Street at Bush. Two cars pulled behind the Mitsubishi and waited for it to turn, then honked their horns. When the Mitsubishi finally moved, the officers initiated a traffic stop for violation of Cal. Veh. Code § 22400(a), conducted a search of the driver, defendant Robeson, and discovered a large amount of money, cocaine base, and marijuana. Robeson moves to suppress the search on the ground that the officers lacked reasonable suspicion for the stop.

Robeson's motion is DENIED. California Vehicle Code section 22400(a) provides that "[n]o person shall drive upon a highway at such a slow speed as to impede or block the normal and reasonable movement of traffic, unless the reduced speed is necessary for safe operation, because of a grade, or in compliance with the law." Cal. Veh. Code § 22400(a). Reasonable suspicion is "not a particularly high threshold to reach," *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013), but it must be based on "specific and articulable facts which, taken together with rational inferences from those facts," justify a police intrusion, *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Although Robeson valiantly argues that his conduct caused at most a momentary hiccup in traffic rather than an actual impediment, he blocked the right hand turning lane at Bush and Hyde Streets for approximately one minute, causing two cars independently to honk. It is unconvincing to contend that Robeson was not impeding the "normal and reasonable" flow of traffic.

### IV. BARRY GILTON'S MOTION TO SUPPRESS CUSTODIAL STATEMENTS ON JUNE 9, 2012[3] (DKT. NO. 589)

At approximately 2:00 a.m. on June 4, 2012, SFPD officers responded to the scene of a shooting at Meade and Le Conte Avenue. Defendant Barry Gilton's minor daughter was screaming and crying next to a Toyota that contained the dead body of Calvin Sneed. In the early afternoon that same day, Inspector Kevin Jones asked Gilton to come in for an interview. At roughly 4:00 p.m., attorney Eric Safire talked with Jones, told him that Gilton was consulting with him about going into the interview, and later left a message with Jones reporting that he had advised Gilton not to give a statement regarding the incident.

On June 9, 2012, the police executed a search warrant at Gilton's residence. Gilton was transported to the police station and charged with the attempted murder and murder of Sneed. Gilton was Mirandized beginning at around noon and then made the statements he now wishes to suppress. Approximately 30 minutes into the interview, Gilton invoked his right to counsel and the questioning stopped. Safire apparently made several calls to the police station and left a voice mail message that Jones heard at approximately 12:55 p.m. that Gilton should not be interviewed without counsel present. Gilton asserts that the police violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that the statements should be suppressed.

Gilton's motion is DENIED. Gilton was not in custody on June 4, 2012 when Safire called to say that Gilton would not provide a statement to the police. Safire's anticipatory invocation of Gilton's Miranda rights was not effective. *See McNeil v Wisconsin*, 501 U.S. 171, 182 n.3 (1991) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.' . . . Most rights must be asserted when the government seeks to take the action they protect against."); *see also* Dkt. No. 667 at 7 (collecting cases).

Gilton argues that because his lawyer invoked his rights concerning the same crime for which he was ultimately charged, the cases cited by the government are distinguishable and the invocation should be effective. No Supreme Court or Ninth Circuit case relied on by the parties has allowed an anticipatory invocation of the privilege, and for that reason alone Gilton's motion

---

[3] Joining is defendant Mercado, Dkt. No. 599.

1 lacks merit.  Moreover, although no Ninth Circuit or Supreme Court case is directly on point, the
2 Second Circuit has persuasively held that a lawyer cannot invoke the privilege in a similar
3 situation because *Miranda* rights are personal to the defendant.  *See United States v. Medunjanin*,
4 752 F.3d 576, 587 (2d. Cir. 2014).  A proper invocation of the right to have an attorney present at
5 questioning "requir[es] a *clear* assertion of the right to counsel."  *Id.* at 586 (internal quotation
6 marks omitted; emphasis in original).  Gilton did not invoke his right to counsel, and lacking that,
7 there was no "bright line that [could] be applied by officers in the real world of investigation and
8 interrogation without unduly hampering the gathering of information."  *Davis v. United States*,
9 512 U.S. 452, 461 (1994).  There were no impediments to Gilton asserting his *Miranda* rights,
10 clearly and affirmatively, once he was in custody.  His failure to do so dooms this motion to
11 suppress.

**IT IS SO ORDERED**.

Dated: January 4, 2015



WILLIAM H. ORRICK
United States District Judge