UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>ALFONZO WILLIAMS,<br>    Defendant. | Case No. 13-cr-00764-WHO-1<br>**TENTATIVE RULINGS FOR HEARING ON JANUARY 8, 2016** |

In the interest of focusing counsel on the issues about which I am concerned, below is the agenda and my tentative rulings on and questions about the motions scheduled for January 8, 2016.

1. Status

I will hear any comments or suggestions concerning the potential revisions to the trial and pre-trial schedule as outlined in my Order on December 30, 2015.

2. CSLI Motions to Suppress

Threshold question: has the government disclosed every order and subpoena requesting cell location information, and all records received therefrom?  Assuming a complete record:

a. I intend to follow the well-reasoned opinions of Judge Koh in *In re Application for Tel. Info. Needed for a Criminal Investigation*, 2015 WL 4594558 (N.D. Cal. July 29, 2015), and Judge Illston in *United States v. Cooper*, 2015 WL 881578 (N.D. Cal. Mar. 2, 2015), and find that defendants had a reasonable expectation of privacy in the CSLI and that probable cause was necessary to obtain it.

b. I also agree with Judge Illston in *Cooper* and Judge Huvelle in *United States v. Jones*, 908 F. Supp. 2d 203 (D.D.C. 2012), that suppression is inappropriate in those instances where the government applied for and received a warrant under 18 U.S.C. § 2703(c).  The Stored

Communications Act allowed such applications and they were reviewed and granted by a Magistrate Judge. There is no suggestion of bad faith by the government in pursuing the CSLI in this manner. For these reasons, I would deny the motions of Williams, Dkt. No. 622, Robeson, Dkt. No. 627, Young, Dkt. No. 687, Gordon, Dkt. No. 605, and Barry Gilton concerning the T-Mobile warrant, Dkt. No. 583.

c. I am inclined to think that the inevitable discovery doctrine allows the searches described in the motions of Barry Gilton for the June 4, 2012 exigent request to T-Mobile, Dkt. No. 588, and Antonio Gilton for the warrant on June 6, 2012, Dkt. No. 570. Are there any cases that have applied it where the delay between the government's initial search and attainment of probable cause was as significant as in the factual scenarios here?

(i) For Barry Gilton, it is a close question whether an "exigent circumstance" existed: SFPD may well have been concerned for the safety of Gilton's daughter, but it was not concerned that Gilton would harm her. For Antonio Gilton, the June 6, 2012 warrant did not supply probable cause. It is a close question whether SFPD could rely in good faith on the warrant given the lack of information about Antonio Gilton in the warrant affidavit.

(ii) But for both defendants, SFPD's interest in them was clear from the outset of the investigation; the additional information received on June 5, 2012 and the continuing investigation provided further important information; and, the surveillance videos shown to SFPD by Special Agent Millspaugh on June 20, 2012 undeniably provided probable cause to obtain a warrant for both defendants' CSLI as of that date. This is not a case, like *United States v Camou*, 773 F.3d 932 (9th Cir. 2014) or *United States v Mejia*, 69 F.3d 309 (9th Cir. 1995), where the improper receipt of evidence supplied or even led to the necessary probable cause; the independent investigation supplied it. Moreover, in Antonio Gilton's case the government had already sought and obtained a warrant for the phone, albeit one that lacked probable cause; the concern that the police would avoid seeking a warrant for the desired evidence in the hopes that the inevitable discovery exception would ultimately make the evidence admissible does not apply in this scenario.

2

3. Williams's Other Motions to Suppress

Williams moves to suppress the warrantless searches of his cell phones on July 5 and September 27, 2012. Dkt. No. 620. The motion is denied. The California Supreme Court had issued *People v. Diaz*, 51 Cal.4th 84 (2011), which provided the good faith reliance needed to avoid suppression. The FBI search occurred pursuant to a warrant issued with probable cause. The inevitable discovery doctrine would also apply to both searches.

Williams moves to suppress statements made in custody. Dkt. No. 621. I defer ruling on the booking statement. The government does not oppose (or has yet to oppose) suppression of the other statement ("that ain't what happened, but it makes sense").

Williams moves to suppress evidence seized on April 6, 1997 during the search of his residence. Dkt. No. 619. The government agrees that it will not introduce any of the items taken, so the motion is granted.

4. Barry Gilton's Motion to Suppress the Search of 35 Jennings Court (Dkt No. 582)

This search was a probation search as well as one for which a search warrant was obtained, and accordingly even the Bible would be covered. For that reason, the motion would be denied.

5. Motions to Dismiss (Dkt. Nos. 611, 617)

In the context of a charge under 18 U.S.C. § 924(j), murder under 18 U.S.C. § 1111 falls within the force clause of 18 U.S.C. § 924(c)(3) because section 924(j) requires that the defendant "caus[e] the death of a person through the use of a firearm" in the course of committing the underlying crime of violence. 18 U.S.C. § 924(j). This requirement categorically limits the scope of section 924(j) to section 1111 murders that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3).

Even outside the context of section 924(j), I disagree with the notion that poisoning or starvation, for example, do not involve physical force perpetrated by the accused against the victim. The Supreme Court's reasoning in *United States v. Castleman*, 134 S. Ct. 1405 (2014), while in the context of a different criminal statute, appears to support my conclusion. *See id.* at 1415 ("That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [defendant's] logic, after all, one could say that pulling the trigger on a gun is not a

3

'use of force' because it is the bullet, not the trigger, that actually strikes the victim."). A number of district courts have applied this particular aspect of *Castleman* in the section 924(c)(3) context. *See, e.g., United States vs. Checora*, No. 14-cr-00457, 2015 WL 9305672, at *4 (D. Utah Dec. 21, 2015); *United States v. Morgan*, No. 14-cr-20610, 2015 WL 9463975, at *2 n.3 (E.D. Mich. Dec. 18, 2015); *United States v. McDaniels*, No. 15-cr-00171, 2015 WL 7455539, at *5 (E.D. Va. Nov. 23, 2015); *United States v. Cruz-Rivera*, No. 15-cr-00486, 2015 WL 6394416, at *4 (D.P.R. Oct. 21, 2015). They have done so for good reason. While *Castleman* addresses a conviction under 18 U.S.C. § 922(g), which requires a lower level of physical force than section 924(c)(3), this particular aspect of *Castleman* concerns not the level of physical force required under section 922(g), but rather what it means to "use" physical force for the purposes of the statute. I see no material difference between section 922(g) and section 924(c)(3) in this regard. Indeed, *Castleman* relies in part on *Leocal v. Ashcroft*, 543 U.S. 1, 4-5 (2004) – which concerns 18 U.S.C. § 16 – for this portion of the opinion.

I do not reach the issue of whether the residual clause of section 924(c)(3) fails under *Johnson v. United States*, 135 S. Ct. 2551 (2015).

The motions to dismiss will be denied.

6. Young's *Massiah* Motion (Dkt. No. 419)

Having reviewed the transcript of the conversation between the informant and Young, I am inclined to deny the motion and to continue to preclude the government's access to the "tainted" portions of it, subject to a motion at trial if Young decides to testify (and even at that point, I would at a minimum preclude disclosure of litigation strategy). Precedent allows the government to use a jailhouse informant to discuss, even solicit, information about crimes not charged with a represented defendant. I do not see any portion of the untainted portion of the transcript where Young discussed the crimes for which he was being prosecuted before Judge Chen. This recording comes close to the line of a *Massiah* violation but does not cross it because of the government's use of the taint team to insure that the prosecutors did not obtain any communications arguably directed towards the then-pending charges.

It is also relevant that the informant initially came to the government with alleged

admissions prior to the taped conversation, and that the government instructed the informant not to solicit information about the then-charged crimes. While the purpose of setting up the conversation was obviously to elicit damning information from Young, the informant primarily was not asking questions of Young; rather, he was keeping the conversation alive in a manner that allowed (or encouraged) Young to keep talking.

7. SFPD Motion to Quash and Williams's Motion to Compel (Dkt. Nos. 542, 580)

There is finally a clearer record concerning the gang records that have been a source of contention from the outset of this case. At his option, Mr. Grele may proceed with argument at the hearing or submit any written response by January 12, 2016 and argue the motion on January 22, 2016.

Dated: January 7, 2016



WILLIAM H. ORRICK
United States District Judge