UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALFONZO WILLIAMS,

Defendant.

Case No. 13-cr-00764-WHO-1

**ORDER ON *DAUBERT* MOTIONS**

Dkt. Nos.: 634, 636, 639, 643, 645, 646, 647, 648, 649, 650, 651

## INTRODUCTION

In this RICO prosecution of various alleged members of a street gang known as the Central Divisadero Players, or CDP, the defendants filed a variety of *Daubert* motions concerning experts the government disclosed concerning gangs, sex trafficking, cell phones, fingerprints, and DNA. As I indicated during the argument on January 22, 2016, I am limiting the parameters of the gang expert's testimony because, as disclosed, he would be supplying opinion testimony concerning evidence that needs to be established by fact witnesses. A revised disclosure narrowed to proper areas of expert testimony and a live *Daubert* hearing on February 12, 2016 will help delineate the appropriate scope of expert testimony.[1] Later in February, I will also hear testimony regarding the reliability of the DNA evidence from the Contra Costa laboratory, and perhaps from SERI as well. The experts disclosed on the other subject areas are qualified by their training and experience to testify as experts and the disclosures of the basis of their opinions are adequate, except as specifically noted below.

---

[1] A more detailed order may follow the live *Daubert* hearing. Because the government sought clarification regarding the revised scope of the gang expert's disclosure sufficiently in advance of the February 12, 2016 hearing to prepare the revised disclosure and to allow defendants to prepare their cross-examination, I am providing this somewhat skeletal order.

**LEGAL STANDARD**

A witness may testify as an expert if she is qualified by knowledge, skill, experience, training or education and her testimony (a) will help the trier of fact understand the evidence or determine a fact in issue, (b) is based on sufficient facts or data, (c) is the product of reliable principles or methods, and (d) reliably applies the principles and methods to the facts of the case. Fed. R. Evid. 702. Whether the proposed opinion is scientific or is based on technical or other specialized knowledge, a trial judge plays a gatekeeper function when it comes to expert testimony to insure that the testimony has "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal quotation marks and alterations omitted); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). As gatekeeper, the trial judge should make an initial assessment of the relevance and reliability of the proposed expert testimony, among other preliminary questions, but there is no requirement to hear live testimony. *See United States v. Alatorre*, 222 F.3d 1098, 1102-03 (9th Cir. 2000).

**DISCUSSION**

**I.  GANG EXPERT**

The overarching problem with the proposed expert testimony of Task Force Officer (TFO) Damon Jackson is that it appears totally focused on the fruits of the Task Force's investigation of CDP. He is a fact witness, appropriately, on a variety of topics. And he may have qualifications and experience to describe the characteristics of gangs in general, which may be helpful background for jurors, and on some narrow topics where expertise is required, such as gang jargon and symbols. But to permit an investigating officer to offer opinion testimony regarding the Task Force's conclusions from the investigation, based on hearsay and street talk, would allow the government an unfair short cut in proving the existence of a criminal enterprise. I agree with the Second Circuit's observation in *United States v. Mejia*, 545 F.3d 179, 190 (2d Cir. 2008):

> If the officer expert strays beyond the bounds of appropriately 'expert' matters, that officer becomes, rather than a sociologist describing the inner workings of a closed community, a chronicler of the recent past where pronouncements on elements of the charged offense serve as short cuts to proving guilt.' As the officer's purported expertise narrows from 'organized crime' to 'this particular gang'. . . the officer's testimony becomes more central to

2

>the case, more corroborative of fact witnesses and thus more like a summary of the facts than an aide in understanding them. The officer expert transforms into the hub of the case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of the defendant's guilt.

The problems of using gang experts in the fashion proposed by the government have been addressed in the cogent opinions of Judge Alsup in *United States v. Cerna*, No. 08-cr-00730-WHA (submitted in this case at Dkt. No. 634, Exs. C, D, E and F), Judge Seeborg in *United States v. Ablett*, No. 09-cr-00749-RS (submitted in this case at Dkt. No. 634, Ex. G), and Judge Illston in *United States v. Flores*, 12-cr-00119-SI (submitted in this case at Dkt. No. 634, Ex. H).

In each of these cases, the scope of the gang expert's testimony was significantly narrowed. Judge Alsup's comments in *Cerna* are instructive: "The existence of any gang and its organization are key RICO proof elements. They should be proven by first-hand testimony, presumably by former members, not by opinion from the police." Dkt. No. 634, Ex C. Judge Alsup ultimately found, after a five day evidentiary hearing, that much of the proffered gang expert testimony would not assist the jury because, among other reasons, its subject matter did not require expert opinion, the *ipse dixit* nature of the opinions would be impossible to cross-examine, and the opinions would be based on otherwise inadmissible hearsay from the street or other officers. Judges Seeborg and Illston and adopted similar rationales in their orders.

Consistent with the orders in the cases discussed above, I conclude that TFO Jackson may be qualified to give expert opinions regarding code words, tattoos, colors, gang-territory mapping, and symbols. In light of his experience and training, TFO Jackson might also be qualified to provide testimony about characteristics of gangs in general (as a sociologist, in the words of *Mejia*) that would be helpful background for jurors, although it is unclear what opinions of this nature TFO Jackson would have that lay jurors would not already be aware of from watching television or reading the newspaper. What TFO Jackson may not do is narrow his general opinions to CDP, except as described above, during his testimony in the government's case-in-chief (unless the defense opens the door in cross-examination).

The government may file a revised disclosure for TFO Jackson's testimony on or before February 4, 2016 that is consistent with the parameters described above and that lists his opinions

3

1    and the basis for them.  To achieve clarity, his proposed opinions shall be listed numerically in the
2    form required in *Cerna*.  *See* Appendix A to the *Cerna* order at Dkt.No. 634, Exh. F.  The revised
3    disclosure shall form the basis of the examination at the hearing set for 9:00 a.m. on February 12,
4    2016.

## II.    SEX TRAFFICKING EXPERT

The government's disclosure for Special Agent Parker avoids the problems I just recounted concerning TFO Jackson.  Parker has the training and experience to testify as an expert generally, and her disclosure shows that her opinions are at a general level and not CDP-specific.  Numerous courts have found that the topics she will discuss are not generally known by jurors, who may benefit from the background she provides.  *See, e.g., United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) ("By and large, the relationship between prostitutes and pimps is not the subject of common knowledge.")

Defendant Robeson argues that some of Parker's disclosed opinions are irrelevant to the counts and overt acts alleged in the Second Superseding Indictment and in government disclosures prior to January 15, 2016, and that they will be prejudicial to him.  It is true that there needs to be a connection between the opinions given and the evidence in the case.  Here, Parker's opinions are sufficiently tied to allegations regarding pimping and the pimping of minors, which appear in several places in the Second Superseding Indictment.  Police reports attached to the Joiner declaration amplify the relationship between Parker's opinions and the case the government intends to make against CDP.  *See* Dkt. No. 752-1, Exs. C-H.  Cross-examination can expose the inapplicability of any opinions to the facts of this case, if there are any gaps.  There is no need to have a further hearing concerning Parker's suitability as an expert or regarding her disclosed testimony.

## III.   CELL PHONE EXPERT

At the hearing, defendants stated that they have the information they need and submitted on my tentative ruling on this motion.  Special Agent Solomon-Hill has the relevant knowledge, training, and experience to testify as an expert.  The disclosure of his opinions is adequate.  The defendants, while having their own experts, did not attack his methodology.  A further hearing is

unnecessary.

## IV. FINGERPRINT EXPERT

Special Agent Gregory has the relevant knowledge, training and experience to qualify as an expert. Defendants briefed the criticism by the National Research Council of the National Academy of Sciences concerning the ACE-V (dominant fingerprint identification) methodology, but as many courts have concluded, that general criticism is grist for cross-examination and will not preclude his testimony. Defendants also argued in their memoranda that Gregory's expert disclosure was incomplete. The government will provide the additional disclosure materials, including a narrative to compensate for the absence of bench notes, within two weeks of January 22, 2016. If there are any *Daubert* challenges based on that disclosure, defendants shall file a supplemental brief a week later. The government will have a week to respond. No reply is needed unless I request one, and I may decide the matter without further argument. No further hearing is necessary at this time.

## V. DNA EXPERT

No issue has been raised about the training and experience of Ms. Kim, the government's DNA expert from the Contra Costa Laboratory. I am ordering a *Daubert* hearing with live testimony to consider the reliability of the results of Defendant Gordon's examination in light of the small amount of DNA able to be tested. The parties shall coordinate schedules and work with Ms. Davis to set a date in February. They shall also consider whether there will be a challenge to SERI's examination of the DNA for Defendants Gordon and Heard and whether it would be efficient to set the hearings regarding both government experts at the same time.

**IT IS SO ORDERED**.[2]

Dated: January 27, 2016

WILLIAM H. ORRICK
United States District Judge

---

[2] All joinder and sealing motions filed in conjunction with the *Daubert* motions heard on January 22, 2016, including Dkt. Nos. 640, 646, 655, 657, 658, 670, 686, 689, 690, 812, and 827, as well as all nonpublic sealing motions, are GRANTED.