UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>      v.<br>JAQUAIN YOUNG,<br>    Defendant. | Case No. 13-cr-00764-WHO-11<br><br>**ORDER ON DEFENDANT JAQUAIN YOUNG'S *MASSIAH* MOTION**<br><br>Re: Dkt. No. 419 |
|---|---|

## INTRODUCTION

This is an eleven-defendant RICO prosecution against alleged members of the Central Divisadero Players ("CDP"), an alleged criminal street gang based in the Western Addition neighborhood of San Francisco. Defendant Jaquain Young moves under the Sixth Amendment right to counsel and *Massiah v. United States*, 377 U.S. 201 (1964), to suppress uncounseled statements he made to a government informant while in custody on charges of attempted pimping in violation of 18 U.S.C. § 2422. The government intends to use the statements to support its RICO and murder charges against Young, which had not been charged at the time the statements were made. But the RICO, murder, and pimping charges are all being tried together before the same jury, and many of the statements captured by the government informant are incriminating with respect to the pimping charges. Under *Massiah* and its progeny, those statements are inadmissible at the trial on the pimping charges and must be suppressed. Young has not identified grounds for suppressing the rest of the statements captured by the informant. Accordingly, his motion to suppress is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On April 4, 2013, Young was indicted for (1) attempted enticement of a minor to engage in prostitution, in violation of 18 U.S.C. § 2422(b); and (2) attempted enticement of an individual to

travel for prostitution, in violation of 18 U.S.C. § 2422(a).[1]  *United States v. Young*, No. 13-cr-00229-EMC (N.D. Cal. filed Mar. 13, 2013) at Dkt. No. 10.  The underlying criminal complaint explains that the FBI and SFPD had been conducting an investigation into CDP, "a racketeering enterprise suspected of sex trafficking, distribution of controlled substances, gun trafficking, robbery, and murder," and that Young "is a member of CDP and a subject of the investigation."  *Id.* at Dkt. No. 1 ¶ 12.  In August 2012, as part of this investigation, an undercover SFPD officer posed as a minor online and made contact with Young through Facebook.  *Id.* ¶ 13.  After exchanging a number of messages with Young over the course of several months, the undercover officer arranged to meet with Young in San Francisco.  *Id.* ¶ 22.  Young was arrested on March 11, 2013 while walking towards the arranged meeting place.  *Id.*  The pimping charges followed.  According to briefing submitted by the government in the pimping case, Young was with another CDP member when he was arrested on March 11, 2013.  *Id.* at Dkt. No. 20 at 3.

On June 18, 2014, Young was brought to the courthouse at 450 Golden Gate Avenue, San Francisco, for a hearing before the Hon. Edward M. Chen on the pimping charges.  Federal agents arranged to lock Young in a holding cell with another inmate who was acting as an informant and who was wired so that his conversation with Young could be recorded.  The agents instructed the informant that he should not discuss Young's pending case but that he should "feel free" to initiate

---

[1] 18 U.S.C. § 2422 provides in whole:

> (a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.
>
> (b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422.

conversation "on the stuff . . . we're interested in." Opp. at 3-4 (Dkt. No. 738).

The informant proceeded to capture approximately 6.5 hours of conversation with Young. The government represents that all portions of the recording regarding the then-pending pimping charges (approximately 38 minutes of the recording) were excised by a "taint reviewer," and that the prosecution team in this case has not been exposed to the excised portion.

Approximately two months after the courthouse recording, on August 14, 2014, a grand jury returned the Second Superseding Indictment that remains the operative charging document in this case. Dkt. No. 139. The Second Superseding Indictment charges Young with the same section 2242 pimping crimes previously charged in the Judge Chen case. *Id.* ¶¶ 60-63. It also charges him with (1) conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); and (2) murder in aid of racketeering of Jelvon Helton, in violation of 18 U.S.C. § 1959(a)(1), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 924(j). *Id.* ¶¶ 52-57. The government states that the overt acts it intends to prove at trial in support of the RICO charge against defendants in this case include Young's attempted pimping of the undercover SFPD officer as well as the following other acts involving pimping and prostitution:

- "On or about August 3, 2002, [Young] persuaded, induced, enticed, and coerced an individual under the age of sixteen to engage in prostitution." *Id.* ¶ 17b.

- "On or about August 6, 2005, [defendant] Paul Robeson harassed and attempted to recruit an individual to work for Robeson as his prostitute with Robeson as her pimp." *Id.* ¶ 17h.

- "On or about November 16, 2005, [Robeson] enticed a minor to engage in prostitution." *Id.* ¶ 17i.

- "From on or about October 1, 2012, up to and including on or about October 10, 2012, [Robeson] attempted to persuade, induce, entice, and coerce a minor to engage in prostitution." *Id.* ¶ 17ff.

- "All evidence and communications (e.g., text messages, Facebook, Instagram) concerning [Young] persuading, inducing, enticing, and coercing individuals to engage in prostitution – including individuals under the age of 16." Dkt. No. 808 (United States' Further Statement Regarding Additional Acts the Government Intends to Introduce at Trial).

- "Evidence that in or around 2007, unindicted CDP member Leon Parker persuaded, induced, enticed, and coerced a 16 year old to

3

engage in prostitution." *Id.*

- "Statements by witnesses that defendant [Alfonzo] Williams has been engaged in persuading, inducing, enticing, and coercing individuals to engage in prostitution." *Id.*

The government identifies five categories of statements by Young that it intends to introduce through the courthouse informant. Opp. at 4. It states that some of the statements it intends to introduce were made before the courthouse recording and some were made during, but it does not specify when any specific statements or categories of statements were made. *See id.* The five categories are:

- "Young's admission that he murdered Jelvon Helton."

- "Young's statements regarding CDP, its members, and the crimes they are involved in."

- "Young's statements regarding how many murders he has committed."

- "Young's statements regarding other women who work for him as prostitutes."

- "Young's statements regarding hiding firearms."

*Id.* The government does not appear to intend to use any of the courthouse statements to prove the then-pending pimping charges against Young, and I assume for the purposes of this motion that it will not.

## LEGAL STANDARD

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. Once a defendant has been charged with a crime and his Sixth Amendment right to counsel has attached, the government is prohibited from "deliberately eliciting" incriminating statements with respect to the charged crime. *Massiah*, 377 U.S. at 206. A "deliberate elicitation" occurs where the government "intentionally creat[es] a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel." *United States v. Henry*, 447 U.S. 264, 274 (1980). To show that incriminating statements obtained by a government informant were obtained in violation of the Sixth Amendment, a defendant "must show that [the informant] was acting as an agent of the [government] when he obtained the information from [the defendant] and

4

that [the informant] made some effort to 'stimulate conversation[] about the crime charged.'" *Randolph v. California*, 380 F.3d 1133, 1144 (9th Cir. 2004) (quoting *Henry*, 447 U.S. at 271 n.9). Because the *Massiah* right is "offense specific," it applies only to incriminating statements pertaining to pending charges as to which the Sixth Amendment right to counsel has attached. *McNeil v. Wisconsin*, 501 U.S. 171, 175-76 (1991) "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Maine v. Moulton*, 474 U.S. 159, 180 n.16 (1985).

**DISCUSSION**

In my last substantive order on this motion, I identified two circumstances where uncounseled statements regarding uncharged conduct should be suppressed in a trial on charges pending at the time the statements were made: (1) where the statements regarding the uncharged conduct are "the fruits" of a *Massiah* violation; and (2) where the statements regarding the uncharged conduct are incriminating with respect to the then-pending charges. *See United States v. Young*, No. 13-cr-00764-WHO-1, 2015 WL 5138520, at *3-5 (N.D. Cal. Sept. 1, 2015).

Young contends that both of these scenarios apply here. *See* Mot. at 8-28. He argues that because the entire courthouse recording is the product of the government's "willingness to compromise [his Sixth Amendment] rights," *United States v. Kimball*, 884 F.2d 1274, 1279 (9th Cir. 1989), all statements from the recording should be suppressed as fruit of the poisonous tree, irrespective of whether the statement are incriminating with respect to the then-pending pimping charges. Alternatively, he argues that certain of the statements captured in the recording are incriminating with respect to the then-pending pimping charges, and that those particular statements should be excluded from this trial.

I do not believe that suppression of the entire recording is appropriate. There is no question that "the appropriate remedy for a violation of *Massiah* includes not only suppression of all evidence directly obtained through governmental misconduct, but also suppression of all evidence that can properly be designated the fruits of that conduct." *Kimball*, 884 F.2d at 1278-79. For evidence to qualify as the fruits of a Sixth Amendment violation, however, "the violation must at a minimum have been the but for cause of the discovery of the evidence." *Id.* at 1279

(internal quotation marks omitted).  In the circumstances of this case, where the informant allegedly told the government prior to the courthouse recording about various admissions Young had previously made, where the government instructed the informant not to question Young about the then-pending charges, and where the vast majority of the recording does not directly address those charges,  I am not convinced that the Sixth Amendment violation in this case is properly characterized as the "but for cause" of all statements captured in the recording.

Young's alternative argument – i.e., that certain of his statements are incriminating with respect to the then-pending pimping charges – has more merit.  Young identifies three categories of statements that should be suppressed under this theory: (1) statements regarding pimping in general or acts of pimping he committed other than those underlying the pimping charges then pending against him; (2) statements regarding his membership in CDP; and (3) statements regarding his ability to avoid detection by law enforcement and/or conviction.  *See* Mot. at 12-28.  Young contends that statements falling within each of these categories are incriminating with respect to the then-pending primping charges and should thus be suppressed under *Massiah*.

While neither party cites any case directly on point with this one, there are some decisions that have addressed roughly similar factual scenarios.  In *United States v. Bender*, the defendant was incarcerated on felon-in-possession charges when he made uncounseled statements to an undercover officer about his schemes to hire a fabricated alibi witness to testify on his behalf in his upcoming trial, and to hire a hitman to kidnap and murder government witnesses who would testify against him.  221 F.3d 265, 267 (1st Cir. 2000).  "There was no discussion of, and [the defendant] made no admissions pertaining to, the pending felon-in-possession charges as such."  *Id.*  The government sought to admit the statements in the trial on the felon-on-possession charges, arguing that *Massiah* did not bar their admission because they "concerned different and future crimes . . . unrelated . . . to the pending charges."  *Id.* at 270.  The First Circuit upheld the district court's suppression order, explaining that the statements

> were incriminating not only as to future crimes (perjury, conspiracy to kidnap and murder) but also as to the pending charges. So long as the statements were incriminating as to the pending charges and were deliberately elicited by government agents, they cannot constitutionally be admitted in the trial of those charges.

6

> At bottom, the government's position is that [*Maine v. Moulton*, 474 U.S. 159 (1985)] is limited to direct statements by the defendant about the crime with which he has been charged. Nothing in *Moulton* supports that limitation, and Sixth Amendment jurisprudence is to the contrary. All that matters is that the statements were incriminating as to the pending charges; it does not matter how. So while [the defendant's] statements suborning perjury did not provide direct evidence in the pending case (e.g., underlying facts, details, and strategy) or amount to an explicit confession, they "strongly tended to show that a guilty mind was at work." . . . [The statements] were obtained in violation of the Sixth Amendment and were rightly suppressed by the district court.

221 F.3d at 269 (internal citations omitted).

In an unpublished habeas case involving similar facts as *Bender*, the Sixth Circuit likewise held that a defendant's statements to an informant regarding his plot to murder two witnesses in his upcoming trial should have been excluded under the Sixth Amendment. *March v. McAllister*, 573 F. Appx. 450, 457-60 (6th Cir. 2014). As in *Bender*, the government sought to introduce the statements "as evidence of a guilty mind" with respect to the charges pending at the time the statements were made. *Id.* at 459. The Sixth Circuit rejected the notion that the "offense specific" nature of the Sixth Amendment right to counsel precludes *Massiah* from applying to statements regarding uncharged conduct that are nevertheless incriminating with respect to then-pending charges. It stated, "We are aware of no precedent which distinguishes amongst elicited incriminating statements – whether they pertain to a charged offense, to an uncharged offense, or to no offense whatsoever. So long as the incriminatory statements are introduced in a matter in which the defendant's right to counsel has already attached, a [*Massiah*] violation occurs." *Id.* at 459-60.

In another unpublished habeas case involving a defendant's statements to an informant regarding his plan to murder a witness to the charges then pending against him, the Ninth Circuit likewise held that the *Massiah* right barred admission of the statements at the trial of the then-charged crimes. *See Honeycutt v. Donat*, 535 F. Appx. 624 (9th Cir. 2013). The Ninth Circuit acknowledged that "[t]he Sixth Amendment did not bar the State's investigation of the solicitation charge, even though [the defendant] was previously charged with the related offenses of sexual assault and kidnapping." *Id.* at 629. However, "[t]he Sixth Amendment did forbid the government from using deliberately elicited statements to incriminate the defendant on charges to

7

which the right of counsel had already attached." *Id.* Following remand to the district court with instructions to determine an appropriate remedy for the *Massiah* violation, the Ninth Circuit affirmed the district court's decision to vacate each of the defendant's three convictions, i.e., for sexual assault, kidnapping, and solicitation. *Honeycutt v. Donat*, 585 F. Appx. 451, 452 (9th Cir. 2014). It stated, "Given the nature of the error at issue in this case, it is clear that in any retrial of [the defendant], [the state] will be required to try separately the solicitation charges from the sexual assault and kidnapping charges if it wishes to rely, in any way, on the evidence obtained in violation of *Massiah*." *Id.*

In line with the federal appellate cases described above, the California Supreme Court, the Ohio Supreme Court, and at least two federal district courts faced with similar facts have also held that deliberately elicited statements regarding an uncharged plan to criminally interfere with pending charges are inadmissible at the trial on the pending charges. *See In re Wilson*, 3 Cal.4th 945, 954 (1992) (finding a *Massiah* violation where "petitioner's remarks, although they do not refer directly to the charged offenses of murder and robbery, were highly incriminating as to the pending charges and were elicited in direct violation of petitioner's right to counsel with respect to those charges"); *State v. Conway*, 108 Ohio St. 3d 214, 227 (2006) ("The state wishes to limit the Sixth Amendment right to counsel to only direct statements by the accused about the indicted offense. Nothing in *Massiah* or its progeny, however, supports this limitation."); *United States v. Thomas*, No. 06-cr-00299, 2009 WL 4015420, at *6-7 (W.D. Pa. Nov. 19, 2009) (holding that the defendant's statements to an informant, regarding his plot to murder a witness to the drug trafficking charges pending against him when the statements were made, were inadmissible at the trial on the drug trafficking charges); *United States v. Lentz*, 419 F. Supp. 2d 794, 819 (E.D. Va. 2005) ("[T]he Sixth Amendment right elucidated in *Massiah* would be eviscerated if statements deliberately elicited by a government agent with respect to an unindicted crime could be used as consciousness of guilt evidence in connection with an indicted pending charge.").

This case differs slightly from those described above in that it does not appear that the government intends to use Young's statements for the specific purpose of proving the then-pending pimping charges. It appears that the government intends to use the statements solely with

respect to the RICO and murder charges from the Second Superseding Indictment. I am not convinced, however, that this difference is sufficient to save from suppression any deliberately elicited statements by Young that are incriminating with respect to the then-pending pimping charges. Presumably, the alternative would be to give the jury a limiting instruction requiring them to consider the incriminating statements only with respect to the RICO and murder charges (and only insofar as the RICO charges do not overlap with the then-pending pimping charges). But the government has not cited any case that has taken this approach when faced with the situation at issue here, i.e., deliberately elicited statements that are (1) incriminating with respect to both then-pending and then-uncharged crimes being tried simultaneously, but that (2) are introduced at trial only with respect to the then-uncharged crimes. And while Young has not cited any case squarely rejecting this approach either, the decisions cited by the parties weigh against it. In *Honeycutt*, for example, the Ninth Circuit did not state that the sexual assault, kidnapping, and solicitation charges could be tried together so long as the jury was properly instructed to consider the defendant's solicitation statements only with respect to the solicitation charges. Rather, the Ninth Circuit stated that "it is clear that in any retrial of [the defendant], [the state] will be required to try separately the solicitation charges from the sexual assault and kidnapping charges if it wishes to rely, in any way, on the evidence obtained in violation of *Massiah*." *Honeycutt*, 585 F. Appx. at 452.

This raises the question of the extent to which the three categories of statements identified by Young are indeed incriminating with respect to his then-pending pimping charges. I find that Young's statements about pimping – whether about the particular conduct underlying the then-pending pimping charges, pimping in general, or other acts of pimping – are incriminating with respect to those charges and must be suppressed. There are a number of general references to pimping and prostitutes in the courthouse recording, and, as the government points out in its opposition brief, Young "repeatedly volunteer[s] information about his other prostitutes, whom he call[s] his 'bitches.'" Opp. at 10. While such statements do not directly reference the then-pending pimping charges, they are incriminating with respect to them. The 18 U.S.C. § 2422(a) charge, for example, will require the government to establish that Young knowingly attempted to

9

1   persuade, induce, entice, or coerce the undercover SFPD officer to travel in interstate or foreign
2   commerce *to engage in prostitution*. *See* 18 U.S.C. § 2422(a) (emphasis added); *see also* Model
3   Crim. Jury Instr. 9th Cir. 8.192 (2010). "The question under § 2422(a) is whether [the defendant]
4   persuaded or enticed the [victim] to travel intending [her] to engage in prostitution." *United States*
5   *v. Rashkovski*, 301 F.3d 1133, 1136 (9th Cir. 2002). Evidence that Young was familiar with
6   pimping and had pimped other women would tend to indicate to the jury that he acted with the
7   requisite intent. *Cf.* Fed. R. Evid. 404(b)(2); *United States v. Winters*, 729 F.2d 602, 604 (9th Cir.
8   1984) (in prosecution under the Mann Act, 18 U.S.C. § 2421, upholding the admission of evidence
9   that the defendant "had similarly beaten, raped, and forced three other young women into
10  prostitution" as evidence of the defendant's "modus operandi, motive, and intent"). Other acts
11  evidence that would "shed[] light on [Young's] purpose" in communicating with the undercover
12  officer would likewise be incriminating with respect to his 18 U.S.C. § 2422(b) charge, "as his
13  intent in communicating with a minor is an essential element of criminal liability under §
14  2422(b)." *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004) (in section 2422(b)
15  prosecution, upholding the admission of evidence that the defendant had previously solicited sex
16  from a minor where "the prior incident was highly probative of [the defendant's] intent and modus
17  operandi with respect to the present act").

18  Young's statements regarding his membership in CDP and his ability to avoid
19  detection/conviction are a closer call. On the one hand, certain statements falling within these
20  categories may be incriminating with respect to then-pending pimping charges. This risk appears
21  especially acute with respect to Young's statements regarding his membership in CDP. The
22  operative allegations against CDP are rife with references to pimping. In addition to the various
23  overt acts regarding pimping listed above, the Second Superseding Indictment accuses CDP and
24  its "members and associates" of "[p]romoting and enhancing [CDP] and the activities of its
25  members and associates, including . . . pimping." Dkt. No. 139 ¶ 9. The Second Superseding
26  Indictment also identifies "pimping, including the pimping of minors," as one of the "means and
27  methods" of CDP. *Id.* ¶ 14. Moreover, according to the government, Young was with another
28  CDP member when he was arrested on March 11, 2013 on his way to the arranged meeting place

10

with the undercover officer. *Young*, No. 13-cr-00229-EMC, Dkt. No. 20 at 3. Given the other evidence likely to be introduced at trial, it is easy to imagine how the jury could view evidence that Young is a member of CDP as tantamount to evidence that he intended the undercover officer to engage in prostitution.

On the other hand, the alleged overt acts, purposes, and means and methods of CDP include a number of other criminal activities besides pimping, and Young's statements regarding his ability to avoid detection/conviction may refer to something other than the then-pending pimping charges. The government has not identified the particular statements regarding Young's membership in CDP or ability to avoid detection/conviction that it intends to use at trial. Without knowing which particular statements to consider, it is difficult for me to determine the extent to which statements from those categories are incriminating with respect to the then-pending pimping charges. Accordingly, I will wait until the government identifies the particular statements that it intends to use, as outlined in the conclusion of this Order, to rule further on these two categories of statements.

The government's counterarguments do not call for a different result. It contends that none of the three categories of statements identified by Young are incriminating with respect to the then-charged pimping crimes, because the proper test for determining whether a statement is "incriminating" in the *Massiah* context is whether the statement concerns a crime that would be considered the same as the pending charges under the *Blockburger* test,[2] not whether the statement concerns a crime that is "factually related" to the pending charges. *See* Opp. at 9. This argument misses the mark. The government is correct that in *Texas v. Cobb*, 532 U.S. 162 (2001), the Supreme Court held that the Sixth Amendment right to counsel does not necessarily extend to any crime that is "factually related" to those that have been charged. *Id.* at 167. Rather, when the right to counsel attaches, it encompasses only those uncharged offenses that would be considered "the same" as the charged offenses under the *Blockburger* test. *Id.* at 173. But whether a statement concerns a crime to which the Sixth Amendment right to counsel has attached is a

---

[2] Named for *Blockburger v. United States*, 284 U.S. 299 (1932).

11

different issue from whether the statement is incriminating with respect to the then-charged crimes. As the cases described above make clear, a statement may "not refer directly to [the] charged offenses" – and, indeed, may concern a separate, uncharged offense to which the right of counsel has not attached – and yet still be "highly incriminating as to the pending charges." *Wilson*, 3 Cal.4th at 954. "All that matters is that the statements [are] incriminating as to the pending charges; it does not matter how." *Bender*, 221 F.3d at 269.

Relying on *Brooks v. Kincheloe*, 848 F.2d 940 (9th Cir. 1988), the government also argues that there was no *Massiah* violation here because (1) the courthouse informant had previously spoken with Young and obtained some incriminating information before the courthouse recording; (2) the government did not offer the informant any payment or plea deal in exchange for the information he obtained; and (3) the government instructed the informant not to discuss the then-pending pimping charges. Opp. at 5. This argument also fails. This Order does not preclude the government from using statements Young made prior to the courthouse recording. But the fact that the informant had previously spoken with Young does not mean that the government could then use the informant to gather additional uncounseled statements from Young without any risk of violating the Sixth Amendment. Indeed, the Ninth Circuit has specifically stated that the government was "on notice of a potential Sixth Amendment violation" where it learned that an informant who had previously (and properly) spoken with the defendant about privileged information, "now acting on behalf of the government, continued to have conversations with [the defendant]." *United States v. Danielson*, 325 F.3d 1054, 1068 (9th Cir. 2003).

The absence of evidence of any explicit compensation agreement between the government and the courthouse informant, and the government's instruction to the informant to not discuss the then-pending pimping charges, likewise fail to remove the facts of this case from the scope of the *Massiah* right. While a compensation agreement "is often relevant evidence in determining whether an informant [acted] as an agent of the State," it is "not necessary" to such a finding. *Randolph*, 380 F.3d at 1144. "[I]t is the relationship between the informant and the State, not the compensation the informant receives, that is the central and determinative issue." *Id.* Further, in determining whether a *Massiah* violation has occurred, "it is not the government's intent or overt

acts that are important" – it is the "likely result" of those acts. *Id.* (internal quotation marks and alterations omitted); *see also id.* at 1146 ("If, in fact, the State placed [the informant] in a cell with [the defendant] after [the informant] indicated his willingness to cooperate with the prosecution, the State intentionally created a situation likely to induce [the defendant] to make incriminating statements without counsel's assistance.") (internal quotation marks and alterations omitted); *Kimball*, 884 F.2d at 1278 ("The government is guilty of 'deliberately eliciting' information if it intentionally creates a situation likely to induce an indicted defendant to make incriminating statements without counsel's assistance."). Here, after the informant offered to cooperate with the government and Young arrived at the courthouse for a hearing on his then-pending pimping charges, the government wired the informant, locked him and Young together in a cell for approximately 6.5 hours, and instructed him to "feel free" to initiate conversation with Young about conduct at least somewhat related to the then-pending pimping charges. The government "knew or should have known that [the informant] hoped that he would be given leniency if he provided useful testimony against [Young]," *Randolph*, 380 F.3d at 1144, and that its acts were likely to result in the deliberate elicitation of incriminating statements without the assistance of counsel. *Brooks* does not control here; *Randolph* does.

## CONCLUSION

For the foregoing reasons, Young's motion to suppress is GRANTED with respect to Young's statements about pimping, whether about the particular conduct underlying the then-pending pimping charges, pimping in general, or other acts of pimping. It is DENIED in all other respects, at least for the time being.

By March 22, 2016, the government shall provide Young with a transcript of the courthouse recording that identifies those portions of the recording it intends to introduce at trial and that is consistent with this Order. In the event that Young contends that the statements concerning CDP or his ability to avoid detection/conviction are incriminating with respect to the then-pending pimping charges, or that the transcript is otherwise inconsistent with this Order, he may raise any objection to the transcript in a motion in limine of no more than five pages by April 1, 2016, to which the government may respond with an opposition of similar length by April 15,

1  2016. This motion in limine shall be filed separately from, and shall not count against, Young's
2  25 pages of motions in limine pursuant to the Order Revising Pre-Trial Schedule. *See* Dkt. No.
3  831.
4  In addition, at the end of its opposition brief, the government renews its request to be
5  granted permission to share the excised portion of the courthouse recording with the prosecution
6  team in this case. Opp. at 19-20. The last time this issue came up, I denied the request, stating
7  that I would "not issue an order finding, before I have even heard the excised portion or been told
8  generally what information it contains, that the prosecutors are absolved of any consequences if
9  they listen to it . . . I will not preemptively rule that Young has waived any objection to the
10 prosecutors hearing the excised 38 minutes . . . The government chose the manner of gathering its
11 evidence and must live with the consequences." Dkt. No. 475 at 2-3. Although I have now seen
12 the excised portion of the recording, I still see no reason to preemptively absolve the prosecution
13 team of the consequences, if any, of reviewing that material. If it does so, it shall inform Young of
14 its decision, and he may raise any appropriate objection. Of course, if Young testifies, the
15 government may review the excised portion of the transcript for purposes of cross-examination.
16 **IT IS SO ORDERED**.
17 Dated: February 24, 2016



WILLIAM H. ORRICK
United States District Judge

14