UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

PAUL ROBESON,

    Defendant.

Case No. 13-cr-00764-WHO-9

**ORDER DENYING DEFENDANT PAUL ROBESON'S MOTION TO SUPPRESS STATEMENTS MADE TO POLICE ON NOVEMBER 16, 2005**

Re: Dkt. Nos. 878, 878-1, 958-1

Defendant Paul Robeson moves to suppress statements he made to the San Francisco Police Department ("SFPD") on November 16, 2005 on the ground that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny. Dkt. No. 878 ("Mot."). For the reasons discussed below, the motion is DENIED.

Robeson was arrested on November 16, 2005 at the Sea Captain Motel. Mot. at 1. He was taken to the SFPD's Northern Station, where two inspectors, Ziegler and Atkinson, interrogated him. *Id.* Robeson provides the following transcript of the relevant portion of the interrogation (with emphasis added to the key portion):

> Ziegler: Paul I'm gonna ask you a couple of questions about the Sea Captain Motel and what was going on with you last night who were you with and all that stuff, I'm gonna read you your rights. Answer yes or no when I read you your rights. You have the right to remain silent do you understand that?
>
> Robeson: (Inaudible)
>
> Atkinson: You have to say yes . . .
>
> Ziegler: Yes or no.
>
> Robeson: Yes.
>
> Ziegler: Anything you say may be used against you in a court of law, do you understand that?
>
> Robeson: Yes.
>
> Ziegler: You have the right to the presence of an attorney before and during any questioning, do you understand that? If you cannot afford an attorney one will be appointed to you free of charge before any questioning, if you want, do you understand that?

Robeson: (Inaudible)

*Ziegler: Having these rights in mind do you want to answer some questions about your whereabouts last night?*

*Robeson: Uhh not really I mean basically all I know.*

Ziegler: You don't want to tell us your side of the story, I mean, you get a chance, one time and one time only, to tell us your side of the story, if not, we turn off the tape and you're going to jail, you got a chance to maybe not to go to jail.

Atkinson: You can talk with us and then if you don't wanna talk you can stop it, if you wanna talk with us at all, we (Inaudible)

Ziegler: I can ask the question, you don't have to answer if you don't want to. Your, your call, if you want me to stop right now I'll stop right now.

Robeson: I mean I have nothing to hide, so, I mean.

Zeigler: If you've got nothing to hide then . . .

Atkinson: Okay, you did answer his question, okay?

Zeigler: Alright, uh, uh, who did you go the Sea Captain with?

*Id.* at 2-3. Robeson then answered the question, and the interrogation continued. *Id.* at 4.

In conjunction with its opposition brief, the government provides its own transcript of the interrogation. *See* Oppo. at 3 (Dkt. No. 958); Joiner Decl. Ex. B (Dkt. No. 958-1). The relevant portion of its transcript is substantially identical to Robeson's, except that it transcribes the key portion of the interrogation as follows:

*Ziegler: Having these rights in mind do you want to answer some questions about your whereabouts last night? (Inaudible) the Sea Captain?*

*Robeson: Uhh, not really, I mean basically all I know . . .*

Oppo. at 3 (emphasis added). Having listened to the audio recording of the interrogation, I find that the government's version more accurately reflects the exchange and adopt that version as the Court's.

Robeson contends that his "not really" answer constituted an unambiguous invocation of his right to remain silent, requiring the officers to immediately cease all questioning. Mot. at 4-6. Alternatively, he argues that the answer constituted an ambiguous invocation of his right to remain

2

1   silent, requiring the officers to cease all questioning except questions aimed at clarifying his intent.
2   *Id.* at 6-10.[1]

3   "[A] suspect must invoke his [*Miranda*] rights affirmatively." *Sessoms v. Grounds*, 776
4   F.3d 615, 624 (9th Cir. 2015) (internal quotation marks omitted). Accordingly, "mere silence does
5   not qualify as an invocation of the right to remain silent," *id.*, and even "an ambiguous or
6   equivocal *Miranda* invocation does not require the cessation of questioning," *Garcia v. Long*, 808
7   F.3d 771, 778 (9th Cir. 2015) (internal quotation marks and alterations omitted). It is only "an
8   unambiguous and unequivocal *Miranda* invocation" that requires the police to stop interrogating
9   the suspect. *Id.* "[I]n determining whether a request is ambiguous or equivocal, the court must
10  apply an objective inquiry." *Id.* "[A] suspect . . . need not utter a 'talismanic phrase' to invoke his
11  right to [remain silent]." *Hurd v. Terhune*, 619 F.3d 1080, 1089 (9th Cir. 2010). However, the
12  suspect must "articulate his desire to remain silent . . . sufficiently clearly that a reasonable police
13  officer in the circumstances would understand the statement to be such a request." *Garcia*, 808
14  F.3d at 777 (internal quotation marks and alterations omitted).

15  Even assuming that Robeson's "not really" answer was directed at whether he "want[ed] to
16  answer some questions,"[2] that answer does not qualify as an unambiguous and unequivocal
17  invocation of the right to remain silent. If Robeson had answered "not really" and nothing more,
18  his argument on this point would be persuasive. *Cf. Smith v. Illinois*, 469 U.S. 91, 96-99 (1984)
19  (finding an unambiguous invocation where the suspect stated, "Uh, yeah. I'd like to do that," when
20  asked whether he understood his right to counsel); *Garcia*, 808 F.3d at 777-78 (finding that the
21  petitioner unambiguously invoked his right to remain silent by stating simply, "No," when asked
22  whether he wished to talk). But immediately after saying "not really," and without any apparent

---

[1] Robeson focuses exclusively on whether he adequately invoked his right to remain silent; he makes no separate argument with respect to waiver or lack thereof. *See* Reply at 1 (Dkt. No. 989) ("[T]his motion concerns invocation, not waiver."); *see also id.* at 2-3.

[2] It is not clear that Robeson's "not really" answer was in response to this inquiry. As reflected in the government's transcript, Ziegler paused after asking that question. Robeson said nothing in response, and then, after a pause, Ziegler said something inaudible followed by "the Sea Captain." Only then did Robeson answer, "Uhh, not really, I mean basically all I know . . . ."

United States District Court
Northern District of California

prompting from the inspectors, Robeson said, "I mean basically all I know . . . ," and continued speaking until Ziegler interrupted him. This language and conduct gives the distinct impression that Robeson had decided to answer the inspectors' questions, not that he wanted their questioning to stop.

Robeson argues in the alternative that, at the very least, his answer constituted an ambiguous invocation of his right to remain silent, requiring the inspectors to cease all questioning except questions aimed at clarifying his intent. Mot. at 6-10; Reply at 8-13. The Ninth Circuit has held that "[w]hen the initial request for counsel is ambiguous or equivocal, all questioning must cease, except inquiry strictly limited to clarifying the request." *Smith v. Endell*, 860 F.2d 1528, 1529 (9th Cir. 1988); *see also United States v. Rodriguez*, 518 F.3d 1072, 1080-81 (9th Cir. 2008) (holding that, after *Davis v. United States*, 512 U.S. 452 (1994), the clarification rule continues to apply "except in situations where the suspect under interrogation has already given an unequivocal and unambiguous waiver of his *Miranda* rights"). Robeson contends that the inspectors violated this clarification rule by attempting to convince him to answer their questions after his "not really" response.

The government responds that the clarification rule was effectively overruled by *Berghuis v. Thompkins*, 560 U.S. 370 (2010), in which the Supreme Court found that the suspect had not unambiguously and unequivocally invoked his right to remain silent, and explained that (1) "[i]f an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights;" and (2) "there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel." *Id.* at 381-82 (internal quotation marks and citations omitted); *see also* Oppo. at 9-12 (Dkt. No. 958).

The government acknowledges that the Ninth Circuit has not addressed whether the clarification rule remains good law in light of *Berghuis*. However, the government points to *United States v. Plugh*, 648 F.3d 118 (2d Cir. 2011), in which the Second Circuit reasoned:

4

> Nor can we accept the proposition that because [defendant's] conduct with respect to his [right to remain silent and right to counsel] was not clear, the custodial officers should have instead asked clarifying questions to determine if [he] was exercising his rights. As the [Supreme Court] has held before and emphasized again in *Berghuis*, absent an unambiguous invocation, custodial officers have no obligation to stop questioning or to ask only questions intended at clarifying an ambiguous statement.
>
> In sum, we conclude on these facts that [defendant] did not unambiguously invoke his right to remain silent or to speak with an attorney. As such, the custodial officers were under no obligation to cease all further questioning, nor are [defendant's] subsequent statements made without the presence of an attorney automatically inadmissible.

*Id.* at 126-27 (internal quotation marks, citations, and alterations omitted). A number of other courts and commentators have reached the same conclusion regarding the impact of *Berghuis* on the clarification rule. *See, e.g., Lopez v. Janda*, No. 13-cv-01196, 2015 WL 3736997, at *5 (C.D. Cal. June 8, 2015) ("[I]f an accused makes a statement . . . that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or to ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.") (internal quotation marks omitted) (on appeal); *United States v. Nazemzadeh*, No. 11-cr-05726, 2013 WL 544054, at *17 (S.D. Cal. Feb. 12, 2013) ("If the defendant makes an ambiguous or equivocal statement, police are not required to end the interrogation or ask questions to clarify the defendant's intent."); *Benson v. Biter*, No. 11-cv-00150, 2012 WL 5214254, at *16 (E.D. Cal. Oct. 22, 2012) ("In the context of the right to remain silent, as with the right to counsel, a suspect must invoke his or her right unambiguously. If the statement is ambiguous or equivocal, or if no statement is made, the police are not required to either end the interrogation or seek clarification whether or not the accused wants to invoke his or her *Miranda* rights."); 2 Crim. Proc. § 6.9(g) (4th ed. 2015) (noting that, after *Berghuis*, "police efforts at clarification remain a *permissible* course of action in cases of actual ambiguity") (emphasis in original).

On the other hand, one court in this district recently concluded (albeit in dicta) that the clarification rule survives *Berghuis*:

> In [*Berghuis*], the Supreme Court held that a defendant who had been Mirandized and subsequently sat in silence for three and a half hours had not invoked his right his right to silence, and that he subsequently waived his Miranda rights by answering an officer's

5

question. Although some language in *Berghuis* could be read very broadly to abrogate the clarification rule, this Court concludes that the clarification rule survives *Berghuis*. In *Berghuis*, the suspect made no ambiguous statement between being Mirandized and answering questions, and so the Supreme Court was not called upon to address the viability of the clarification rule. While a court looks to the totality of the circumstances in determining the voluntariness of a waiver, the Ninth Circuit has drawn, and has yet to erase, one bright line among those circumstances: when a defendant makes an ambiguous, unclarified response to an officer asking if he wishes to speak to police, that compels a conclusion that there has been no waiver.

*United States v. Hurtado*, 21 F. Supp. 3d 1036, 1041 (N.D. Cal. 2014) (internal quotation marks and citations omitted). The court went on to find, however, that the clarification rule did not apply, because the defendant's "utterance unambiguously communicated an affirmative response to the officer's question" and there was "nothing in the utterance that is reasonably susceptible to the interpretation that it might be a refusal to talk, or . . . an even equivocal invocation of the right to remain silent or the right to have an attorney present." *Id.*

It is not clear to me that Robeson's "not really" answer rises to the level of an ambiguous invocation of the right to remain silent. As discussed above, it is not clear from the audio recording or transcript what question or statement Robeson was responding to when he gave the answer, and even assuming that he was responding to whether he "want[ed] to answer some questions," the answer, when viewed as a whole, gives the distinct impression that Robeson had decided to answer the inspectors' questions, not that he wanted their questioning to stop. The only countervailing factor is that the inspectors themselves appear to have understood the answer as an ambiguous invocation. But even assuming that the answer is properly characterized as rising to that level, I agree with the government that *Berghuis* is "clearly irreconcilable" with the clarification rule. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). Accordingly, Robeson's motion to suppress is DENIED.

**IT IS SO ORDERED**.[3]

Dated: June 14, 2016

WILLIAM H. ORRICK
United States District Judge

---

[3] All sealing requests submitted in conjunction with the briefing on this motion are GRANTED. *See* Dkt. Nos. 878-1, 958-1.