SEVERA KEITH, CSBN 218167
THE KEITH LAW OFFICE, P.C.
214 Duboce Avenue
San Francisco, CA 94103
(415) 626-6000 - Telephone
(415) 255-8631 - Facsimile

Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>MONZELL HARDING, ET AL.,<br><br>Defendant. | Case No. CR 13-00764-WHO<br><br>**DEFENDANTS' JOINT TRIAL MOTION TO EXCLUDE AND STRIKE IRRELEVANT AND PREJUDICIAL HEARSAY STATEMENTS; REQUEST FOR LIMITING INSTRUCTION FOR TESTIMONY OFFERED FOR A LIMITED PURPOSE**<br><br>DATE:  TBD<br>TIME:  1:00 p.m.<br><br>The Honorable William H. Orrick |

    To date, the Court has admitted into evidence several out-of-court statements that were not offered for the truth of the matter asserted.  Rather, the evidence was purportedly offered for a non-hearsay purpose, such as showing the effect on the listener or providing context.  The defense has objected numerous times to the admission of such evidence.  This motion sets forth the legal standards for the admission of out-of-court statements offered for a purpose other than the truth of the matter asserted, the necessity of instructing the jury on the limited purpose for which such evidence is admitted, and the reasons why many of the statements previously admitted as "non-hearsay" evidence were improperly admitted.  Appropriate relief is requested.

# ARGUMENT

## A. Non-hearsay Statements Are Subject to Rule 401 and 403 Analysis

The beginning of the analysis to determine whether an out-of-court statement, not offered for the truth of the matter asserted, is the determination of whether the proffering party has offered a legitimate non-hearsay purpose, but this is not the end. The proffered testimony must withstand scrutiny under Rules 401 and 403. "Testimony containing hearsay may be admissible not for its truth but as background information if (1) 'the non-hearsay purpose by which the evidence is sought to be justified is relevant,' and (2) 'the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement.'" *Ryan v. Miller*, 303 F.3d 231, 252 (2nd Cir. 2002), citing *United States v. Reyes*, 18 F.3d 65, 70 (2nd Cir. 1994). Such testimony can be admissible as background to explain subsequent actions or can be "helpful in clarifying noncontroversial matters without causing unfair prejudice on significant disputed matters." *Reyes*, 18 F.3d at 70.

Admissibility is not justified when the government states a non-hearsay purpose for testimony, but the jury is likely to consider the statement for its truth, and prejudice results. The *Reyes* court offers the following guidance:

> Questions involved in the determination of the relevance and importance of such evidence include: (i) Does the background or state of mind evidence contribute to the proof of the defendant's guilt? (ii) If so, how important is it to the jury's understanding of the issues? (iii) Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions? (iv) Has the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the Government?
> Questions involved in the assessment of potential prejudice include: (v) Does the declaration address an important disputed issue in the trial? Is the same information shown by other uncontested evidence? (vi) Was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury? (vii) Will the declarant testify at trial, thus rendering him available for cross-examination? If so, will he testify to the same effect as the out-of-court statement? Is the out-of-court statement admissible in any event as a prior consistent, or inconsistent, statement? (viii) Can curative or limiting instructions effectively protect against misuse or prejudice?

*Reyes*, 18 F.3d at 70-71 (footnotes omitted).

**B.      Irrelevant and Minimally Probative or Prejudicial Out-of-Court Statements Must Not Be Admitted.**

In the present case, many of the statements already admitted as hearsay are highly prejudicial because the admitted testimony was only relevant if true. *United States v. Meserve*, 271 F. 3d 314 (1st Cir. 2001), illustrates this point. There, a detective's testimony, that he drove past suspect's house because defendant "became as suspect in the case because he matched the description of the robber" and because the complaining witness "thought Meserve might have been the robber because she knew him," was irrelevant if not offered for the truth. The government argued that the evidence was offered to explain the reason the detective drove by Meserve's home. *Id.* at 319. The court disagreed.

> In the instant case, however, the government's espoused reason for introducing the testimony -- to explain why Detective Pomerleau drove by Meserve's house on the evening of the robbery -- is completely irrelevant to the government's case. Detective Pomerleau did not discover any evidence or valuable information during his drive-by and made no observations pertinent to the investigation; thus, the fact that he went on such a drive has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Detective Pomerleau's <u>motivation</u> for driving by Meserve's home is likewise irrelevant. In light of the government's baldly pretextual basis for the introduction of Craig's out-of-court statement, this court is not prepared to say that the statement is admissible non-hearsay.

*Id.* at 320 (emphasis in original).

Similarly, if a statement only provides context if truthful, it is rendered irrelevant and prejudicial if offered for a non-hearsay purpose. For example, in *United States v. Stover*, 329 F.3d 859, the D.C. Circuit held that the trial court erred in admitting audio and video recordings of a co-conspirator using coded language when he sold drug to an undercover agent. The government's non-hearsay purpose for introducing the video was, *inter alia*, to provide context to other proffered conversations in which the co-conspirators used clothing terminology as code for drugs.[1]  While finding that the recordings were clearly relevant and provided context, the

---

[1] The Court also found that the statement was not admissible as either a co-conspirator statement, as a verbal act, or to prove the declarant was a drug dealer. *Id.* at 869-870.

Circuit Court determined that the statements were hearsay, because they would not be relevant if not for their content.

> As to using the recordings to establish context, the Government seems to be saying that all out-of-court statements offered for context do not constitute hearsay. However, that a statement provides context to other evidence does not mean that the statement is not hearsay. All relevant evidence provides context to the events underlying the charged crime. The question is whether the statement is offered for its truth. Here, the Government introduced Lama's statement that Agent Bryant and Lama should refer to drugs as clothes as evidence of the fact that Lama used clothing terminology to refer to drugs in other conversations. The statement is not probative of that fact unless the Government offered the statement for the truth of its content. The jury, using the statement, could infer that Lama and his co-conspirators referred to drugs as clothes only from the fact that Lama and Bryant referred to drugs as clothes - that is, through the statement's content. The statement thus was hearsay, and its admission was erroneous.

*Stover*, 329 F.3d at 870.

**C.    The Court Should Strike Irrelevant, Prejudicial Hearsay Testimony that Was Previously Admitted**

The Court has jurisdiction to strike prior hearsay after it had been admitted. *United States v. Tavares-Hernandez*, 639 F. App'x 491, 491-92 (9th Cir. 2016). The defendants request that the Court strike the prior hearsay that was offered for the truth of the matter asserted. In *Tavares-Hernandez*, the trial court did not commit error when it struck the contested hearsay the morning after it had been given, because "a district court may reconsider its prior rulings so long as it retains jurisdiction over the case." *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (citing *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001)). In that case,

> [t]he government had contemporaneously objected to some, but not all, of the hearsay-eliciting questions, and Tavares contends the government's request the following day to strike all of the testimony constituted impermissible "sandbagging." "[T]he contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Puckett v. United States*, 556 U.S. 129, 134, 129 S. Ct. 1423 (2009) (some internal quotation marks omitted).

4

> The government did not "sandbag" Tavares because it did not await the outcome of the case before raising the issue. Although the government did not object to every hearsay-eliciting question immediately after it was asked, "trial courts have broad discretion in making evidence rulings and handling late objections." *Jerden v. Amstutz*, 430 F.3d 1231, 1237 (9th Cir. 2005) (internal quotation marks omitted) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995)). The district court did not abuse that discretion here.

*United States v. Tavares-Hernandez*, 639 F. App'x 491, 491-92 (9th Cir. 2016).

The defense requests that the Court strike the following testimony for the reasons set forth below.

a. <u>November 29, 2017 between Carmichael-linked phone and unknown party</u>

Beginning at RT 2150:8, Special Agent Walker testified regarding text messages between a phone linked to Carmichael and an unknown party. Several text messages were read to the jury and the meanings of word such as "O.G." and "katta" were explained to the jury. *See* RT 2151:10-22. In response to defense counsel's hearsay objection at RT 2154:7-9, counsel for the government states that, "we are not offering the fact that STICK2DASCRIPT will only mess with things on his hip. It's not being offered for the truth of the matter asserted. It's being offered for the fact that this message was sent to Vernon Carmichael, who is a co-conspirator." RT 2154:7-14.

However, belying government counsel's proffered basis for admissibility, he asks in the next breath, "So what does STICK2DASCRIPT tell the user of Vernon Carmichael's phone?" After Walker reads the content of the text message, whose purported non-hearsay purpose was for the "fact that it was sent," Walker testifies that the content of that text messages gives her information about the type of guy a katta is, confirming her prior testimony that it means pistol. RT 2155:5-22. This testimony is the springboard to highly prejudicial testimony about different sorts of guns. RT 2155:1-RT 2157:3.

The Court permits Walker to read into testimony, "Ook yea I don't want no revolver I ain't a yung nigga nomoe fifteen are betta bra," but the non-hearsay purpose is not articulated. It is only offered "not for the truth." RT 2157:8-15. "The response is, 'Haaaa. Any bullet betta den no bullet bra. A o.g. told me dat." The reply to that, "And he aint lie but I jus cant b rockin wit six shots." Walker then interprets these texts in a highly prejudicial way: "So basically he's

5

saying that six shots – six rounds are not enough, 15 are better, so a gun that could carry 15 rounds would be better." RT 2157:9 -2158:3. It is unclear throughout why Walker's prejudicial, speculative, and foundationless "translations" of these text is relevant when the statements are not being offered for the truth. This reading of statements not offered for their truth into the record ends at RT 2158:22. What is very clear if that the only proffered non-hearsay purpose for this testimony fails. Clearly, the fact that these messages were sent is irrelevant. The only reason these text messages would be relevant is for their content. The messages from the unknown party are not even admissible as context, because they only provide context if the content is considered. *See Stover*, 329 F.3d at 370. Further, absent the government establishing that the unknown party is a co-conspirator and that the sent messages are from Carmichael, these statements cannot be admitted as co-conspirator statements. *United States v. Bridgeforth,* 441 F.3d 864, 869 (9th Cir. 2006). This testimony must be stricken from the record and the jury properly instructed.

b. November 28, 2017 testimony about car rental by Rita Evans

At RT 1917:8-17, the court permitted hearsay to come in for the truth of the matter. There is no question that a car rental agent telling a police officer about the contents of the rental company's records is a statement that contains multiple levels of hearsay. Since the hearsay objection was overruled, the statement came in for the truth. Fed. R. Evid. 801(a). Furthermore, there is no possible hearsay exception that would render this statement admissible. This statement only explains what the officer did next if the statement is offered as the truth – that the fact that Rita Evans rented the car is true. As such, it cannot come in as hearsay. *Meserve*, 271 F. 3d at 320. This testimony must be stricken.

c. November 20 and 27, 2017 testimony about Robert Huntley's nickname being "Mister"

Over a number hearsay objections, Exhibit 109 was conditionally admitted on November 20, 2011. RT 1448:3. Officer Neece read several hearsay statements from it regarding an unidentified party with a "510" area code who was sending text messages to a phone associated with Esau Ferdinand. Although Neece could not recall whether he heard the name "Robert Huntley" during his investigation, a focus of the testimony was the exchange between the Ferdinand-linked phone and the 510 number. The hearsay statement, "Load des 7.62 up, you

know," played a prominent role in Neece's testimony. RT 1454:8-1455. No non-hearsay relevant purpose was offered for this particular hearsay testimony.

San Pablo Police Officer Downey testified over objection to Lorna Levexier's statements about Robert Huntley, and pertinently that she referred to him by the nickname, "Mister." RT 1734:18-RT 1735:14. The non-hearsay purpose for this testimony is that it was "not an assertion of fact," but was on the "mention" of a name. *Id.* In other words, the government is stating that it did not mean for this evidence to come in for its truthful purpose of proving that Huntley's nickname is Mister. If that was the case, then no relevant purpose existed for this testimony. However, the government claims that the relevance is that, "This is a name associated with additional evidence that is going to be presented during this testimony and has already been presented during the testimony of Detective Neece." RT 1734:24-RT 1735:3.

Downey then testified about a "piece of paper with numerous phone numbers" written on it. RT 1740:22-23; RT 1742:15-16. This piece of paper was photographed during the warrant search of the Levexier residence and admitted into evidence as Exhibit 1636-019, over hearsay objection. RT 1743: 20-1744:7-9. Downey then testifies that the same 510 number that appeared on the Ferdinand-linked phone is associated with the name, "Mister." RT1744:11-13. Then the Court permits further hearsay from Downey that confirms that he had previously heard that nickname during the course of his investigation. RT1744:14-20.

Clearly, writings on paper are hearsay. "'Statement' means a . . . written assertion … if the person meant it as an assertion." Just as bookkeeping logs of a business are hearsay (albeit generally reliable hearsay, hence the business records exception to the hearsay rule) because they are writings that assert facts, a phone book is hearsay, and so is a list of phone numbers. The government's assertion is that, "This is just a piece of paper with numbers on it, Your Honor. There is no hearsay," is without merit. RT 1744:2-3.

The danger presented by allowing statements offered "not for the truth" is illustrated here. In this case, the government introduced several pieces of evidence, not offered for the truth, to bolster other evidence offered not for the truth. Because this hearsay was not admitted for a legitimate purpose, and is highly prejudicial, it must be stricken from the record, and the jury properly instructed.

7

d.  Other hearsay statements not offered "not for the truth"

The defense reserves the right to, and will supplement this brief with additional examples of hearsay statements that have indeed been offered for the truth of the matter asserted, as review of the trial transcripts thus far is ongoing.

Thus far hearsay and statements not offered for the truth have figured prominently in this trial thus far. "Not for the truth" is not an exception to the hearsay rule. When a statement is offered for a non-truthful purpose, the proffering party must state a relevant basis for its admissibility. Many times, this has not happened. Furthermore, even if a relevant basis, the court must weigh whether the relevance of the out-of-court, not offered for the truth statement is admissible under the lens of Fed. R. Evid. 403. *United States v. Reyes*, 18 F.3d 65. A fair trial cannot be had without adherence to these standards.

**D.   Request for Limiting Instructions for All Testimony Admitted for a Limited Purpose**

In instances where evidence is indeed introduced not for the truth after an articulated, relevant purpose and Rule 403 balancing, the defendants respectfully request that the Court give limiting instructions at the times when evidence introduced for a limited purpose is placed before the jury. The defendants assert that in a lengthy, complex trial such as this one, limiting instructions should be given when the evidence at issue is adduced, as well as at the end of trial.

> [B]oth the Supreme Court and this court have made very clear that limiting instructions are necessary to reduce the prejudicial effect of joinder. *See Zafiro*, 506 U.S. at 539 (noting that limiting instructions will often suffice to cure any risk of prejudice in joint trials); *Armijo*, 5 F.3d at 1233 (holding that, although conviction need not be reversed, court erred by failing to give a limiting instruction informing the jury that evidence of a witness' prior inconsistent statement could be used only to impeach the witness' character for truthfulness and could not be used as evidence of Armijo's guilt); *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) (noting the central importance of determining whether the trial judge diligently instructed the jury on the purpose of the various types of evidence); *United States v. Sherlock*, 962 F.2d 1349, 1362 (9th Cir. 1989) (holding that where the court failed to instruct the jury after the prosecutor improperly referred to an excluded portion of codefendant's confession during closing arguments, the defendant was "significantly prejudiced" and entitled to a new trial); *United States v. Vaccaro*, 816 F.2d 443, 449 (9th Cir. 1987) ("The prejudice of a joint trial must be such as to violate a defendant's fair rights: i.e., . . . [the] failure to instruct the jury properly on the admissibility of

8

evidence as to each defendant."), *abrogated on other grounds*, *Huddleston v. United States*, 485 U.S. 681, 99 L. Ed. 2d 771, 108 S. Ct. 1496 (1988).

*United States v. Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000). A court's failure to provide limiting instructions for statements not offered for the truth can constitute error. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1248 (9th Cir. 1997).

In the present case the need for contemporaneous limiting instructions is particularly acute where witnesses may testify over a span of several days, and the jury may not be charged until months after some testimony is presented. See *United States v. Latouf*, 132 F.3d 320, 329 (6th Cir. 1997), cert. denied, 523 U.S. 1101 (1998) (district court's limiting instruction with regard to "other acts" evidence "untimely" when the testimony at issue was introduced on a Friday and the limiting instruction was not provided until the following week.)

The Court should also provide limiting instructions at the end of trial. As the Ninth Circuit once warned, in the case of a long, complex trial involving multiple defendants,

> the human limitations of the jury system and the consequent risk of spillover prejudice cannot be ignored. This risk is particularly acute for comparatively peripheral defendants ... who [are] charged only in [a single] conspiracy count and whose separate trial could have been concluded in a matter of days or weeks, but who was required to sit in the courtroom during months of proof involving entirely unrelated conspiracies and substantive offenses. At oral argument in this case, the Assistant United States Attorney averred that his multiple violations of the district court's limiting instructions during closing argument were the inadvertent result of confusion. When a seasoned prosecutor is unable to keep track of nearly 200 limiting instructions given over the course of a trial, our faith in a lay jury's ability to do so is stretched to the limit. Our presumption that a jury is able to follow the trial court's instructions is 'rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.' The presumption is not irrebuttable.

*United States v. Baker*, 10 F.3d 1374, 1390 (9th Cir. 1994) (citations omitted).

### E. Request for Limiting Instruction for Testimony Not Stricken

Correspondingly, defendants request a limiting instruction for all statements mentioned in section C, supra, that the Court does not strike from the record. "If the court admits evidence that is admissible against a party or for a purpose — but not against another party or for another

purpose — the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105.

**CONCLUSION**

For the reasons set forth above, Monzell Harding, through counsel and on behalf of all his co-defendants, respectfully requests that the court grant this motion, strike the requested testimony, require a

Dated November 30, 2017                                          Respectfully Submitted,

                                                           SEVERA KEITH
                                                           Attorney for Monzell Harding