DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
STEPHEN MEYER (CABN 263954)
PHILIP KOPCZYNSKI (NYBN 4627741)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    kevin.barry@usdoj.gov
    stephen.meyer@usdoj.gov
    philip.kopczynski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 13-764 WHO |
| Plaintiff, | |
| v. | **DECLARATION OF PHILLIP HOPPER IN SUPPORT OF UNITED STATES' OPPOSITION TO REGINALD ELMORE'S MOTION TO EXCLUDE OPINIONS OF SERI FORENSIC SEROLOGIST PHILLIP HOPPER REGARDING DNA EVIDENCE** |
| ALFONZO WILLIAMS, et al., | |
| Defendants. | |

HOPPER DECL.
CR 13-764 WHO

I, Phillip Hopper, being duly sworn, declare:

## BACKGROUND

1. I am an employee of Serological Research Institute ("SERI"), and have been since 2010. I presently hold the titles of Forensic Serologist III and DNA Technical Leader. In my present roles, I oversee the technical operations of SERI's laboratory, and perform casework. My casework consists of extracting, quantifying, amplifying, and analyzing DNA from reference and evidence samples, and writing reports of analytical reviews.

2. I hold a Master of Science degree in chemistry from the University of California, Riverside, and a Bachelor of Science degree in chemistry from Erskine College.

3. I have testified as an expert witness in state court proceedings on eight occasions.

4. I periodically review research studies and other literature, and attend training courses, to stay abreast of the latest developments in my field. I also undergo semi-annual proficiency testing on the amplification kits used by SERI. My most recent testing occurred in September 2018. In all of my proficiency testing at SERI dating back to 2012, I have typed all samples correctly.

5. SERI has maintained accreditation by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCLD/LAB") since 1999 and is currently accredited as an American National Standards Institute-American Society for Quality ("ANSI-ASQ") National Accredited Laboratory. SERI has been assessed by the ANSI National Accreditation Board ("ANAB") and meets their 2017 accreditation requirements for ISO/IEC 17025:2005. SERI maintains compliance with the FBI Quality Assurance Standards for Forensic DNA Testing Laboratories, verified through continual on-site visits and complete quality assurance audits. In addition, SERI has been accredited by the Texas Department of Public Safety and the Maryland Department of Health.

## VALIDATION OF GLOBALFILER

6. SERI has internally validated the GlobalFiler PCR Amplification Kit with the 3130xl Genetic Analyzer, which is the kit and analyzer I used when performing the analysis in question in the above-referenced case. GlobalFiler is a relatively new kit produced by Thermo Fisher Scientific that amplifies 24 loci. SERI validated GlobalFiler in December 2016.

7. GlobalFiler added several highly polymorphic loci to the set of loci amplified by earlier

kits. A highly polymorphic locus is one at which the population at large has a great variety of alleles (called heterozygosity), and thus the particular alleles present at that locus in an evidence sample may better distinguish among possible contributors.

8. SERI tested two-, three-, four-, and five-person mixtures as part of its validation study for GlobalFiler. The correct number of contributors could be deduced from each two-, three-, and four-person mixture tested. In each five-person mixture tested, the electropherograms showed no indication of more than four contributors. This was not due to a shortcoming of GlobalFiler or the testing process, but rather because, by coincidence, the contributors used to create the test mixtures shared alleles. Given the genotypes of the contributors, no more than eight alleles could appear at any one locus.

## VALIDATION OF BULLET

9. Bullet is a probabilistic genotyping program available to forensic laboratories, including SERI, that participate in the eDNA Consortium.

10. Bullet relies on several variables to calculate a likelihood ratio. The variables include, among others, information about allele frequencies by population (African American, Asian, Caucasian, and Hispanic) and probabilities of drop-in and drop-out for a particular amplification kit and genetic analyzer. Bullet arrives at an overall likelihood ratio by calculating a likelihood ratio for each tested locus, and then multiplying them together.

11. A likelihood ratio is a ratio of two probabilities. Likelihood ratios have been used in the medical field for some time, and have become common in forensic DNA analysis in recent years. In a typical case of forensic DNA analysis, one probability is the probability of the DNA evidence if it originated from the suspect, while the other probability is the probability of the evidence if it originated from an unknown individual. The likelihood ratio is the ratio between the two. A likelihood ratio of greater than 1 tends to suggest inclusion of the suspect, while a likelihood ratio of less than 1 tends to suggest exclusion.

12. Unlike some probabilistic genotyping software, such as STRmix and TrueAllele, Bullet performs only one calculation, and does not use a Markov Chain Monte Carlo method. This eliminates the slight variability of results that can occur with those other programs. With Bullet, the likelihood ratio is always the same given the same inputs.

13. Bullet is a semi-continuous probabilistic genotyping program. Semi-continuous means, among other things, that the program relies on the serologist performing the testing to make a limited number of subjective judgments about the tested evidence sample, including a judgment about the number of contributors to the sample.

14. SERI internally validated Bullet in April 2018. I was Technical Leader for the validation. In planning and performing its internal validation, SERI consulted the Guidelines for the Validation of Probabilistic Genotyping Systems published by the Scientific Working Group on DNA Analysis Methods ("SWGDAM"). SERI's validation of Bullet included two-, three-, and four-person mixtures. The overall conclusion of the validation study was that Bullet is robust and appropriate for the statistical interpretation of complex mixtures.

15. Among other factors examined in the validation study for Bullet, SERI examined the possibility of false inclusions. SERI performed Bullet likelihood ratio calculations for 40 known non-contributors to mixtures with various contributor ratios. Bullet did not produce a likelihood ratio of greater than 1 for any known non-contributor using GlobalFiler, meaning there were no false inclusions.

**TESTING IN THIS CASE**

**A.   Analysis of Apparent Number of Contributors**

16. In 2018, the government asked me to analyze several items of evidence in this case, including two swabs taken from the right rear door handle of the car in which Isiah Turner and Andre Helton were murdered. I was aware that a colleague of mine had analyzed these items in 2012, but I was instructed to perform my own independent analysis using the latest technologies.

17. Half of each swab from the right rear door handle was consumed by the prior testing, so half of each swab remained. I extracted DNA from those halves, and then combined it with untested DNA extract leftover from the prior testing. By combining the new extract with the leftover, I ensured that the most possible DNA from both swabs was included in my analysis.

18. I amplified the DNA extract using the GlobalFiler kit and separated the amplified DNA using the 3130xl Genetic Analyzer.

19. I analyzed the electropherogram to determine the number of contributors to the sample. The most common allele count was three. Three alleles were present at seven loci. The highest allele

count was seven. Seven alleles were present at two loci. Because each human being possesses two alleles at a given locus, and thus may contribute at most two alleles to a sample, the presence of seven alleles at those loci indicated that this sample was a mixture of four contributors.

20. There are several factors that, in a different case, might have led me to suspect that the mixture had more than four contributors, but that were not present here. One example is peak height imbalance. The height of each allele peak on an electropherogram (as measured in relative fluorescence units) is a function of the amplification process and the amount of DNA that the allele's contributor contributed to the sample. Peaks heights of alleles from the same contributor are expected to be within roughly 60% of one another when using GlobalFiler. Thus, in this case, if I had seen, say, seven alleles at a given locus, and three had materially different heights from the other four, as well as materially different heights from one another, that might have led me to conclude there were five contributors. I did not, however, see any such peak height imbalances.

21. In addition, when analyzing an electropherogram, I will disregard any peaks that are below the analytical threshold, even though it is possible that those disregarded peaks represent alleles from minor contributors. In this case, however, there were no below-threshold peaks at one of the two loci that had seven alleles, and at the other locus, there was a single below-threshold peak that, even if I considered it in my analysis, would bring the total number of alleles at that locus to eight.

22. As another example, in some cases I might conclude that a peak, while above the analytical threshold, is a stutter peak, and therefore exclude it from my analysis. In this case, however, I did not remove any stutter peaks from the electropherogram.

23. As still another example, in some cases the electropherogram may not reveal the true number of contributors because of allele sharing. Allele sharing occurs when two or more contributors to a mixture have the same alleles at a given locus. Shared alleles appear as a single peak on an electropherogram. Thus, to give a hypothetical, if I observe eight alleles at a particular locus, but know that two known contributors share the same alleles at that locus, then that would leave six alleles unaccounted for. Those six alleles would represent at least three additional contributors, for a total of five contributors in the mixture. In this case, however, I did not observe any indication of allele sharing of this sort. In fact, the suspect, Reginald Elmore, and the victim, Isiah Turner, whom I treated as a

HOPPER DECL.
CR 13-764 WHO                                             4

1  known contributor to the mixture, have just seven alleles in common across all tested loci.  At the two
2  loci in the electropherogram where seven alleles are present, Elmore and Turner share no alleles, and all
3  four of their alleles are present, which leaves just three alleles at those loci unaccounted for.

4      24.    Based on all of these considerations, I believe that the sample from the right rear door
5  handle is a mixture of at least four contributors.  I say "at least" because, outside of laboratory controlled
6  conditions, it is impossible to know with certainty the number of contributors to a mixture.  It is always
7  possible that the true number of contributors is more than the apparent number of contributors, because
8  degradation of the sample may cause alleles to drop out.  In addition, as noted earlier, different
9  contributors can have the same alleles at a given locus.  Still another consideration is that some
10 contributors are homozygous (meaning both of their alleles are the same at a given locus).  Testing a
11 greater number of loci, including highly polymorphic loci, as the GlobalFiler kit does, makes it more
12 likely that the apparent number of contributors is the true number.  Nevertheless, my practice is to
13 qualify my determination about the number of contributors to a mixture by saying that it is at least the
14 apparent number.

15     25.    The use of the qualifier "at least" with my conclusion that there were at least four
16 contributors does not mean that the testing fell outside of SERI's validation for GlobalFiler or Bullet.
17 As discussed above, SERI validated the kit and the probabilistic genotyping program for two-, three-,
18 and four-person mixtures

19     26.    When I concluded that the sample in question was a four-person mixture, I was not aware
20 of the conclusion on that question reached by my colleague who performed the prior analysis on the
21 same sample, and in particular, I was not aware that he wrote in his report that it was a five-person
22 mixture.

23     **B.**    **Calculation of Likelihood Ratio**

24     27.    I used Bullet to calculate a likelihood ratio for Elmore.  As stated in my written report,
25 the likelihood ratio is 270,000.  Consistent with recommendations published by SWGDAM in 2018, I
26 calculated the likelihood ratio for African-American, Caucasian, and Hispanic populations, and reported
27 the lowest of the three.

28     28.    According to SERI's verbal scale, which I discuss further below, this likelihood ratio

provides very strong support for the proposition that Elmore is a contributor to the sample.

29. I have reviewed the motion filed by Elmore regarding my conclusions, and I noted his criticism of the manner in which I described the likelihood ratio in my report. I discussed the matter with my colleagues at SERI, and I decided that the phrasing should be slightly modified to precisely capture the concept of a likelihood ratio. I will issue a revised report in which I will state the following: "Assuming Isiah Turner is a contributor to this mixture, the DNA evidence is at least 270 thousand times more likely if it originated from Isiah Turner, Reginald Elmore (item 21A-1), and two unknown, unrelated individuals than if it originated from Isiah Turner and three unknown, unrelated individuals."

### C.   Other Factors

30. Another factor that gives me confidence in my conclusion that there is very strong support for the inclusion of Elmore is that one of the victims, Isiah Turner, is assumed to be a known contributor to the mixture. Based on my analysis, the mixture is at least 18 billion times more likely if it originated from Isiah Turner and three unknown, unrelated individuals than if it originated from four unknown, unrelated individuals. Because of that extremely high likelihood ratio, when performing the analysis for Elmore, I assumed Turner was a contributor to the mixture. This meant there were only three unknown contributors in the mixture rather than four, and thus fewer genotypes to consider.

31. Bullet will not calculate a likelihood ratio for five-person mixtures, with one exception. Bullet will calculate a likelihood ratio for a five-person mixture if there are only four (or fewer than four) unknown contributors to the mixture—in other words, if one or more contributors are known. Understanding this about Bullet, I recently checked to see how the likelihood ratio for Elmore would change if the mixture in question were assumed to have five contributors, with one being Turner. The likelihood ratio that resulted from this revised input was roughly 60,000. A likelihood ratio of 60,000 is considered by SERI to provide very strong support for inclusion. I would not formally rely on this result, because SERI has not validated Bullet for use for five-person mixtures, but this result illustrates what I know from other experience to be true, which is that the likelihood ratio would not dramatically change if the mixture in question had five contributors instead of four.

32. Relatedly, when validating Bullet, SERI experimented with changing the assumed number of contributors to see how it affected likelihood ratios. From running 128 simulations with data

collected from the 3130xl Genetic Analyzer, SERI found that when changing the number of contributors to something lower than the actual number of contributors—for example, assuming three contributors for a known four-person mixture—the Bullet likelihood ratio decreased, and in some cases fell below 1. When changing the number to something larger than the actual number of contributors, the Bullet likelihood ratio generally decreased but remained in the same order of magnitude.

### D. Verbal Scale

33. SERI developed the following verbal scale for likelihood ratios: a likelihood ratio of 100 to 1,000 provides "strong" support for inclusion; a likelihood ratio of 1,001 to 1,000,000 provides "very strong" support for inclusion; and a likelihood ratio of over 1,000,000 provides "extremely strong" support for inclusion. SERI developed this verbal scale and validated Bullet before SWGDAM published a recommended verbal scale. SWGDAM's recommended verbal scale is not universally followed in the forensic DNA industry.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: Apr. 3, 2019

_[signature]_
PHILLIP HOPPER