UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALFONZO WILLIAMS,

Defendant.

Case No. 3:13-cr-00764-WHO-1

**ORDER ON MOTIONS IN LIMINE**

Re: Dkt. Nos. 2010, 2011, 2012, 2013, 2014, 2015, 2036 and 2037

## INTRODUCTION

This case involving allegations of racketeering and murder in aid of racketeering began with eleven defendants. Five of the defendants went to trial from November 6, 2017 to March 5, 2018, were found guilty and have been sentenced. A sixth defendant entered into a plea agreement on May 10, 2018, and has been sentenced. *See* Dkt. No. 1810 (under seal). Trial is set to begin for four more defendants on May 6, 2019.[1] Before me are motions in limine filed by the government (Dkt. No. 2011), Reginald Elmore (Dkt. Nos. 1247, 2012),[2] Antonio Gilton (Dkt. No. 2013), Barry Gilton (Dkt. No. 2014), and Alfonzo Williams (Dkt. No. 2015). My rulings follow.

## DISCUSSION

### I.    GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF PIMPING[3]

The Second Superseding Indictment brought prostitution and pimping charges against

---

[1] Lupe Mercado has been severed from this trial because of the unavailability of counsel for health reasons.

[2] Elmore renews the motions he filed prior to the first trial. For clarity, I will refer to Elmore's original motions as "Elmore First MiL No. X" and his additional motions as "Elmore Second MiL No. X."

[3] The defendants move to exclude evidence of overt acts related to pimping. *See* A. Gilton MiL

Joaquin Young and Paul Robeson, who are not defendants in group 2.[4]  Second Superseding Indictment ("2SI") [Dkt. No. 139] ¶¶ 48-51 (Robeson), 60-63 (Young).  It also alleges that pimping, including pimping of minors, was one of the purposes, means, and methods of the CDP enterprise, and that pimping constituted racketeering overt acts.  *Id.* ¶¶ 4, 6, 9.b, 14, 15.c, 17.b, h–i, dd–gg, 20.

Prior to the first trial, I found that evidence of pimping and the enticement of minors was admissible because "[t]he incidents specifically alleged in the second superseding indictment [were] within the scope of the charged conspiracy and not subject to Rule 404(b) analysis."  Omnibus Order on Motions in Limine ("Omnibus Order") [Dkt. No. 1343] 17.  One of those incidents was Young's enticement of a minor to engage in prostitution on August 3, 2002.  2SI ¶ 17b.  In post-trial motions, Young challenged my admission of evidence that he pimped women in 1999, 2001, and 2002, arguing that it was unfairly prejudicial and that the government had not shown that the conduct was "inextricably intertwined" with the enterprise.  Motion for Acquittal and for a New Trial [Dkt. No. 1784] 13.  I agreed that the government's allegations about the relationship between those incidents and the enterprise "were not completely borne out at trial."  Order on Post-Trial Motions [Dkt. No. 1839] 33.  Specifically, the government failed to show substantial evidence connecting that activity with CDP.  *See id.*

The government now moves to admit evidence of pimping by members of CDP "as direct evidence of the existence of the enterprise at the center of the RICO conspiracy, as evidence of racketeering acts performed by members of that enterprise, and as evidence of the VICAR motive for the murder of Calvin Sneed."  Government Motion in Limine to Admit Evidence of Pimping ("Gov't MiL") [Dkt. No. 2011] 1.  It asserts that such evidence is admissible because "(1) pimping evidence is directly relevant to the VICAR murder of Calvin Sneed; (2) pimping evidence is direct evidence of the RICO conspiracy; (3) pimping is not 'other acts' evidence governed by Rule 404; and (4) there is no requirement in RICO conspiracy law that there be evidence of shared proceeds

---

No. 4; Williams MiL No. 7.

[4] Joaquin Young was tried with group 1, and Paul Robeson entered into a plea agreement.  *See* Dkt. No. 1810 (under seal).

from prostitution or that there be the equivalent of a VICAR motive for pimping." *Id.* at 2–3. The defendants seek to exclude the same evidence.

In their memoranda, the parties misunderstood my statement in the Order on Post-Trial Motions regarding the evidence of Young's pimping in 1999, 2001 and 2002. I did not rule that the government failed to show evidence that pimping was a means and method of the enterprise. My discussion focused on the incidents that were *remote in time*—the testimony from TW and CW dating back to 1999 to 2002—and concluded that such evidence likely should have been evaluated under Rule 404(b) as Young's prior bad acts. *See* Order on Post-Trial Motions 32. Those acts were admissible using that analysis. My statement related to my perception that the government made little effort in the first trial to tie Young's conduct in those remote crimes, which were admissible as prior bad acts, to CDP.

Given the lack of proven connection to CDP, that remote evidence is inadmissible against the group 2 defendants, and defendants' motions are GRANTED with respect to evidence that Young pimped CW and TW in 1999, 2001, and 2002. For the same reason, I will not admit *Strictly Pimpin'*, the rap song written and sung by Young more than fifteen years before the charge on which he was convicted was brought.

But unlike the older incidents, as I noted in the post-trial order, the pimping of AW in 2012 in Los Angeles was "more recent and tied to another alleged CDP member," namely Tyrice Ivy. *See id.* at 34; Gov't MIL 6. The second superseding indictment includes pimping as a means and method of the enterprise. The evidence about AW is admissible, as is the remaining evidence of alleged pimping activities by members of CDP: Robeson harassing and attempting to recruit an individual to work for him as his prostitute on August 6, 2005 (2SI ¶ 17h); Robeson enticing a minor to engage in prostitution on November 16, 2005 (2SI ¶ 17i); Young attempting to entice an individual to travel in interstate commerce to engage in prostitution from April 9, 2012 to March 11, 2013 (2SI ¶ 17dd); Young attempting to entice a minor to engage in prostitution from August 9, 2012 to March 11, 2013 (2SI ¶ 17ee); Robeson attempting to entice a minor to engage in prostitution from October 1, 2012 to October 10, 2012 (2SI ¶ 17ff); and Robeson attempting to entice a minor to engage in prostitution from October 1, 2012 to October 10, 2012 (2SI ¶ 17gg).

3

**A.** **Overt Acts Referenced in the Second Superseding Indictment (A. Gilton MiL No. 4; Williams MiL Nos. 5, 7, 9, 10; Elmore First MiL Nos. 1, 2)**

The defendants ask me to reconsider my prior ruling allowing evidence of overt acts referenced in the Second Superseding Indictment. *See* Omnibus Motion 17.

### 1. Pimping Acts

Defendants seek to exclude evidence of pimping by Young and Robeson on the grounds that there is not sufficient evidence to tie those activities to the conspiracy. *See* 2SI ¶¶ 17b, h–i, dd–gg. For the reasons set forth above, this motion is GRANTED with respect to Young's 1999, 2001, and 2002 acts but DENIED as to the remaining acts. *See infra* Section I – Government's Motion to Admit Pimping Evidence.

Williams also seeks to exclude evidence of pimping by him on the grounds that it does not fit the statutory definition, it is unrelated to the conspiracy, and it is unfairly prejudicial. The motion is DENIED. Evidence of pimping is admissible as a means and method of the enterprise even if it did not involve minors or crossing state lines. Pimping is sufficiently tied to the enterprise for the reasons articulated above. *See supra* Section I. Williams can raise the challenges he asserts during argument and cross-examination, but this evidence is admissible.

Williams also moves to exclude evidence from FBI Special Agent Marty Parker about the coercive relationships between pimps and prostitutes. The government hopes to reach a stipulation with defendants that will prevent the need for it to call Parker. This motion is GRANTED WITHOUT PREJUDICE to the government raising this issue de novo.

### 2. Witness Intimidation (A. Gilton MiL No. 11; Williams MiL No. 12a[5])

The defendants ask me to reconsider my decision to allow evidence of the alleged incident of witness intimidation on the grounds that it is a time-consuming collateral matter, there is insufficient evidence that the act was done in furtherance of the conspiracy, and the incident is prejudicial. The government counters that the incident is listed as an overt act in the Second Superseding Indictment and that it is relevant to its theory that CDP members threaten and intimidate witnesses who are cooperating with law enforcement. *See* 2SI ¶ 17w.

---

[5] Williams's motion repeats number 12, so I address the first one as "12a" and the second one as "12b."

United States District Court
Northern District of California

1   There is conflicting evidence concerning this incident, and it did consume a lot of trial

2   time.  *See* Order on Post-Trial Motions 11.  Whether intended as a criminal act or not, the incident

3   showed a group of alleged CDP members acting in concert to support a CDP member in a manner

4   that was perceived by some in the courtroom (but not others) as intimidating.  I will not preclude

5   the government from presenting this evidence again if it chooses to do so.

6   I previously found that Eric Safire was not a co-conspirator.  His statements (67, 69, 70)

7   are admissible, however, not for the truth of the matter but to explain what J.B. did on the day

8   before and day of the preliminary hearing.

9   ### 3.  Other Acts

10  The defendants move to exclude evidence of other overt acts referenced in the Second

11  Superseding Indictment on grounds that the acts are irrelevant, unfairly prejudicial, or should be

12  excluded under Rule 404(b).  The defendants argue that many of the acts "involve a defendant

13  acting alone, engaging in activity that is not included within the definition of racketeering activity,

14  or engaging in activity that is not part of the scope of the alleged criminal enterprise."  A. Gilton

15  MiL 13.  They specifically challenge the following acts:  Robeson possessing packaged rocks of

16  cocaine base on March 18, 2004 (2SI ¶ 17e), Heard possessing a firearm on February 26, 2005

17  (2SI ¶ 17f), Ferdinand possessing packaged rocks of cocaine base on May 23, 2005 (2SI ¶ 17g), A.

18  Gilton carrying a loaded, concealed firearm in his vehicle on April 6, 2007 (2SI ¶ 17m), Elmore

19  possessing a firearm on April 24, 2007 (2SI ¶ 17n), A. Gilton possessing cocaine on May 1, 2008

20  (2SI ¶ 17o), and Elmore brandishing and discharging a 9 mm assault style pistol during the funeral

21  of a rival gang member on January 8, 2009 (2SI ¶ 17v).

22  These acts are not subject to Rule 404(b) analysis because they fall within the scope of the

23  charged conspiracy.  *See* Omnibus Order 17; *United States v. Cervantes*, No. 12-00792-YGR, Dkt.

24  No. 1007.  I conclude, consistent with my ruling during the first trial:

25

26  These acts fall within the alleged means and methods of the
    enterprise, which, as charged, included an agreement to distribute

27  narcotics, engage in pimping, threatening and intimidating witnesses,
    and engage in acts of violence, in part by circulating a collection of

28  firearms. 2SI ¶¶ 12–14.  At this juncture, I am not inclined to exclude
    any of these acts under Rule 403.  If it becomes evident during trial

5

> that the probable value is substantially outweighed by the dangers articulated in Rule 403, I will entertain an appropriate objection at that time.

Omnibus Order 17. I will approach the group 2 defendants' objections in the same way. However, I intend to allow the government to present evidence of acts only as far back to 2003, or within ten years of the second superseding indictment, which would exclude Williams's April 6, 1997 possession of cocaine base. *See* 2SI ¶ 17a. The government has indicated that it does not intend to introduce evidence of incident. The motion is GRANTED WITHOUT PREJUDICE to the government raising it de novo.

**B.     Other Acts Referenced in the Second Superseding Indictment and Additional Acts in Dkt. No. 851 (A. Gilton MiL No. 4; Williams MiL Nos. 7, 12b; Elmore First MiL No. 6)**

As the group 1 defendants did, the defendants here challenge the government's intent to introduce evidence of additional acts on the grounds that it is irrelevant, prejudicial, and cumulative. They ask that the government be permitted to choose just five additional acts to introduce in order to cut down on prejudice. The government asks me to adopt the same approach to the first trial: to give it the opportunity to prove its case and to assess defendants' cumulative evidence challenge as the trial progresses. The government also represents that it does not anticipate presenting any other acts that have not been alleged in the Second Superseding Indictment, noticed as additional acts in January 2016, or presented during the first trial. Gov't Oppo. to Williams 9.

Accordingly, I see no reason to impose an additional limit on the government's presentation of uncharged acts. The defendants are free to raise challenges to any uncharged criminal or non-criminal acts during the course of the trial. At that time, I will assess whether the acts are "inextricably intertwined" with the charged conspiracy so as to avoid Rule 404(b) analysis.

At this stage, I will only address defendants' challenges to specific acts.

**1.     A. Gilton's April 19, 2007 Firearm Possession (A. Gilton MiL No. 5)**

On April 19, 2007, Gilton was involved in an incident during which he exchanged gunfire with another individual. In the first trial, I admitted his conviction for that offense as enterprise

6

evidence. *See* Omnibus Order 15. Gilton challenges the admissibility of this incident, arguing that the government failed to provide notice of its intent to introduce it and that it is irrelevant to the conspiracy.

Given that this incident was the subject of discovery in May 2014 and that I admitted the conviction during the first trial, I find unpersuasive Gilton's arguments that it should be excluded for lack of notice. As for relevance, Gilton challenges the incident because it took place far from CDP "turf" and there is no evidence that the individual who shot at Gilton did so because of his CDP affiliation. At the hearing on these motions, I asked to review the police report concerning this incident. Having done so, and for the same reasons articulated above, this evidence is relevant to the government's theory that the enterprise involved acts of violence and possession of firearms. Finally, the incident's probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403. The motion is DENIED.

### 2. A. Gilton Being Victim of Shooting on June 29, 2012 (A. Gilton MiL No. 6)

Gilton seeks to exclude evidence that he was shot on the grounds that it is irrelevant to his alleged affiliation with CDP and is prejudicial to connect him with gun violence for which he was not responsible. The government counters that the incident is relevant to its theory of the gang rivalry between CDP and KOP, particularly because took place just one block from the de facto CDP clubhouse. This incident is relevant and probative. The motion is DENIED.

### 3. Vanson Truong Robbery and Shooting (Williams MiL No. 6)

The defendants seek to exclude evidence that Ferdinand robbed and shot Vanson Truong on April 3, 2003 because the jury acquitted Ferdinand of that crime during the first trial. *See* 2SI ¶ 17z. The government does not intend to present evidence of this act. The motion is GRANTED.

### 4. Turk Street Shootout

The defendants seek to exclude evidence of the 2010 Turk Street Shootout on the grounds that it was committed by unindicted co-conspirators. In the first trial, I found that the government had sufficiently connected the Turk Street Shootout to the conspiracy charge because it was necessary to explain the rivalry between CDP and KOP. *See* Omnibus Order 19. The defendants

cannot claim insufficient notice because the government disclosed its exhibit list years ago, and this evidence was presented at the first trial. This motion is DENIED.

### 5. Gun in Hospital Parking Lot

Williams seeks to exclude evidence of an incident that took place in the San Francisco General Hospital and hospital parking lot on February 2, 2007. Officers were at the hospital to investigate shootings of a CDP member and a KOP member. Williams was there, as were other members of CDP. When Williams saw the officers, he ran, and one officer saw him "attempt to hide in the bathroom with a panicked look on his face." Officers saw 2-25 individuals in the parking lot, including two CDP members. Later a civilian found a firearm in the wheel well of his parked car. Williams seeks to exclude all of this evidence and specifically argues that the firearm cannot be connected to him.

The motion is GRANTED as to the gun because there is not enough evidence to connect it to Williams or other alleged members of CDP. The motion is DENIED as to Williams's presence at the hospital and his conduct, including running upon seeing the police.

### C. Prior Convictions (A. Gilton MiL Nos. 7, 8)

The defendants seek to prevent the government from using evidence of a guilty plea or conviction as substantive evidence of guilt and request a limiting instruction for any such evidence used for impeachment. The government agrees that such evidence is usually inadmissible for guilt but criticizes the lack of specifics in the motion. Given the parties' agreement, this motion is GRANTED WITHOUT PREJUDICE to the government raising it de novo.

The defendants also challenge the use of convictions for impeachment. For the first trial, I ruled on the admissibility of prior convictions. *See* Omnibus Order 15–16. Gilton mounts new challenges to admissibility of certain convictions that have passed the ten-year threshold since that time, arguing that their probative value does not substantially outweigh the prejudice. The government argues that I already ruled that the convictions were admissible and Gilton should not be able to benefit from "the arbitrary fact that he was not tried in the first trial group." I will measure the ten-year rule with the same starting point I used for the first trial. This motion is DENIED.

8

### D. Co-Conspirator Statements (A. Gilton MiL No. 3; Elmore First MiL Nos. 3, 5; Elmore Second MiL No. 5; Williams MiL No. 13)

"To qualify for the hearsay exception of Rule 801(d)(2)(E), a foundation (must be) laid to show that: (1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979). Of course, "[n]ot all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy." *Id.* at 520. Rather, the government must show that the declarations "further the common objectives of the conspiracy." *Id.*

As was true in the first trial, where the statements were made by defendants, they are admissible as party admissions. The question is whether they are admissible against all defendants because they were made during the pendency and in furtherance of the conspiracy. The Ninth Circuit in *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) gave the following expansive examples:

> statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a coconspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities . . . . When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement.

*Id.* at 529.

#### 1. Young's Statements

Defendants assert that Young's statements are not admissible as co-conspirator statements and request a hearing to address each statement in turn.

The defendants first seek to exclude statements made by Young to Bruce Lee Marshall. The defendants argue that the conspiracy had ended because all of the defendants were in custody. Second, even if the conspiracy was ongoing, the statements were not in furtherance of it because Young was trying to impress Marshall, not recruit him. Even if some statements are admissible, those relating to Young's and others' prior bad acts are not. *See Eubanks*, 591 F.2d at 520

(admitting some statements but excluding others that lacked evidence showing they were made in furtherance of the conspiracy). The government counters that a statement need not actually further the conspiracy in order to be "in furtherance of" the conspiracy. *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993) (noting that the proper inquiry is into "the declarant's intent in making the statement, not the actual effect of the statement").

It appears to me that some of Young's statements to Marshall may be admissible and others inadmissible. I will need to consider the statements the government intends to use on a statement by statement basis. Neither side offered the specific statements about which they argued. I requested at the hearing, and the government provided, a transcript of portions of the taped conversation in lockup on the 20th floor between Young and Marshall. Those portions of the conversation, considered by themselves, do not appear in furtherance of the conspiracy; they seem focused on Young, his crimes, and his perspectives (not always flattering) about others. But Marshall also testified that on different occasions Young said that Marshall's talents would make CDP "invincible", strengthening CDP because of Marshall's skill in locating people, including snitches, and mobile surveillance. (CT 3675 – 3677).

Recruiting statements were in furtherance of the conspiracy. The testimony in the first trial did not focus on when Young developed the intent to recruit Marshall, but recruitment would likely have included descriptions of the capacity of CDP (number of bodies, types of crimes, and operation of the enterprise). That some of these may have also been boastful statements does not undercut the purpose of recruiting Marshall to CDP. So the context and timing of the conversations and statements may determine admissibility. Instead of deciding this issue in a vacuum, I order that one week before Marshall testifies, the government shall identify Young's statements that it seeks to introduce through Marshall as being in furtherance of the conspiracy. It may, but need not, file a brief of no more than five pages along with the statements to support admissibility. Defendants shall respond within three days with a brief of no more than five pages. Then I will rule on this part of the motion in limine prior to Marshall's testimony.

The defendants also seek to exclude text messages between Young and the women he was pimping because they were not made in furtherance of the alleged conspiracy. The government

counters that the messages were in furtherance of the conspiracy because they relate to "ways in which pimps control the behavior of their prostitutes," including with drugs, food, physical violence, threats, and changes from positive to negative treatment. For the reasons set forth above I will admit evidence related to Young's post-2002 pimping activities, including the referenced messages, which were statements made in furtherance of the conspiracy to pimp.

Williams seek to exclude evidence of statements Young made to Special Agent Millspaugh that inculpate Williams. The government does not plan to admit these statements. This motion is GRANTED WITHOUT PREJUDICE to the government raising it de novo.

### 2. Other Objections

The defendants make a general objection to other statements by alleged co-conspirators and request evidentiary hearings so that I can determine each statement's admissibility. Consistent with the first trial, I do not think a separate hearing on each statement is necessary prior to trial. *See* Omnibus Order 25. The same procedure from the first trial is appropriate. Accordingly, the government shall provide me with a binder containing the statements it intends to use and shall give notice to defendants at least two days prior to the date it plans to use the statement. Defendants should give both the government and me notice of any significant evidentiary objections on the following day.

### E. Other Hearsay Objections (A. Gilton MiL No. 9)

The defendants challenge the admissibility of Bruce Lee Marshall's testimony that the "Cannabis Club guy" told Young that a father had learned his daughter was being pimped. Gilton asserts that this testimony involves multiple levels of hearsay, and there is no exception for the statement from the Cannabis Club guy to Young. The government counters that the statements are not hearsay because they are not being offered for their truth but to corroborate Marshall's testimony. Specifically, Marshall's testimony about the Cannabis Guy and about B. Gilton's daughter being pimped are consistent with Hunter's accounts of both of those topics. Accordingly, the government offers Marshall's testimony not for the truth of the matter—B. Gilton's alleged motive to kill Sneed—but rather to corroborate his testimony about the Helton murder at the Gravity Bar. Given the experience of the first trial, I expect that Marshall's

credibility will be attacked. The government may introduce this evidence on redirect assuming Marshall's credibility is attacked on cross-examination. This motion is GRANTED with this caveat.

### F. Gang Testimony and Evidence

#### 1. Testimony Describing Defendants as "Gang Members" (A. Gilton MiL No. 12)

In the first trial, I ruled over the defendants' objections that lay witnesses would be able to describe defendants as "gang members" or "CDP members," and the defendants would be able to challenge the foundation of that testimony by objection or on cross-examination. Omnibus Order 27–28. I concluded that the testimony would not "impermissibly offer legal conclusions to the jury" and that the government would still have to "prove the existence of an enterprise, its conduct, and a pattern of racketeering activity." *Id.* 28. The defendants raise this objection again, arguing that the testimony should be excluded because of the "natural and unavoidable conflict between common parlance and legal significance." A. Gilton MiL 23. This motion is DENIED for the same reasons articulated in my prior order.

I also ruled that only witnesses with personal knowledge would be able to describe any defendant as a gang members or CDP member. Omnibus Order 29. At least one witness, Sergeant Jackson, was offering lay witness opinions that certain defendants were gang members and expert opinions on slang terms. To prevent the jury from giving too much weight to his lay testimony, I ruled that the government would not be able to refer to him as an expert witness in front of the jury. *Id.* I will adopt the same approach here.

#### 2. Gang Expert (A. Gilton MiL No. 14)

The defendants assert that during the first trial, Sgt. Jackson opined not just on his understanding of slang but also—impermissibly—on "what particular defendants meant by their use of slang terms in a telephone call and a series of text messages." A. Gilton MiL 25. The government challenges this characterization of the testimony, noting that no defendants from the first group objected to Sgt. Jackson's opinions on those grounds. I have already laid out the parameters within which Sgt. Jackson can offer his opinions. The defendants can raise challenges

to his testimony as necessary during the course of trial. Accordingly, this motion is DENIED WITHOUT PREJUDICE.

### G.    Photographs

#### 1.    Gruesome Crime Scene and Autopsy Photographs (A. Gilton MiL No. 15)

Both sides generally agree to adopt the same procedure for review of crime scene and autopsy photographs that I used for the first trial. Accordingly, the government shall provide to defendants the photographs it intends to use at trial, and the parties shall meet and confer about them. They shall present any disputes to me so that I can assess whether they are unduly prejudicial or cumulative. I will defer ruling on this motion until specific disputes arise.

#### 2.    Mug Shots (A. Gilton MiL No. 13)

Before the first trial, I deferred ruling on the admissibility of mug shots pending the government providing the cropped and modified photographs it sought to introduce. Omnibus Order 30–31. The defendants renew the challenge to the mug shots by relying on factors created in the First Circuit and adopted by other courts:

> 1. The government must have a demonstrable need to introduce the photograph;
> 2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
> 3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photograph.

*United States v. Carrillo-Figueroa*, 34 F.3d 33, 40 (1st Cir. 1994). I agree with the premise of defendants' motion. I will wait to rule until I know which photographs the government intends to introduce and for what purpose.

#### 3.    The Composite Photograph (Elmore Second MiL No. 2)

Exhibit 43 is a composite photograph of 21 alleged members of CDP. The government relied on it during the first trial for witnesses to identify individuals they recognized. The defendants assert that "the chart conveys the message that those individuals are associated with one another in a common enterprise," thereby assuming facts that the government must prove.

13

Elmore Second MiL No. 2. Instead of relying on the composite, the defendants argue, the government should simply display one defendant's photograph at a time to a witness. The government counters that there is no dispute as to the accuracy of the exhibit, which is merely a convenient way to speed the process by which witnesses could identify individuals.

"Before submitting summaries or charts for a jury's inspection, the court must find there is sufficient factual basis for admitting them and that possible prejudice or confusion does not outweigh their usefulness in clarifying the evidence." *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984) (noting that the trial court had excluded the charts because they contained argumentative inferences prior to their modification); *see also United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977) (determining that it was error to admit a chart that included inadmissible evidence). There is no dispute that there is a sufficient factual basis for the composite; the question is whether the possible prejudice outweighs its usefulness.

During the first trial, the composite was useful because the government did not necessarily know which members of CDP each witness would identify. The composite allowed those identifications to occur quickly. Now that the government knows the CDP members each witness will be able to identify, there is no longer a need to present the entire composite to each witness (unless a defendant objects to the pre-selection of photographs to be shown to the witness). If any witness is able to identify all or substantially all of the individuals listed in the composite, it may still be used. But for witnesses who will identify only a handful of members, the government should use specific member images rather than the composite. This motion is GRANTED as set forth above.

### H.     Motions Related to Sneed Murder

#### 1.     Attempted Murder of Calvin Sneed (B. Gilton MiL No. 1)

B. Gilton seeks to exclude evidence of the May 27, 2012 attempted murder of Calvin Sneed. He first argues that the evidence is not relevant to the charge that he killed Sneed on June 4, 2012 in San Francisco. Of course, evidence that Gilton attempted to kill Sneed on a prior occasion would tend to make more probable the government's charge that Gilton successfully killed Sneed outside of Gilton's home in San Francisco just a short time later. Gilton was in Los

Angeles at the time of the attempted murder, which took place outside of the medical marijuana dispensary where his daughter worked, and cell phone records place his phone and Lupe Mercado's in that area at least twice on that day. In addition, the government has evidence that Gilton was aware that Sneed was pimping his daughter, which provides a motive for the attempt and actual killing. This evidence is sufficient to support the government's theory that the attempted murder is admissible as direct evidence of the June 4 murder, and I do not need to assess its admissibility under Rule 404(b). The evidence is not unfairly prejudicial under Rule 403.

### 2. Bible Page (B. Gilton MiL No. 2)

B. Gilton moves to exclude evidence of a dog-eared page from the Bible found on the nightstand in Gilton's home in San Francisco. After discovering the Bible and the dog-eared page during the search of the home, Sergeant Braconi photocopied it and then highlighted the following passage: "And Reuben answered them, saying, Spake I not unto you, saying, Do not sin against the child; and ye would not hear? therefore, behold, also his blood is required."

Gilton first argues that the Bible page is not relevant to show Gilton's motive for killing Sneed because the government cannot establish who dog-eared it. But the Bible was found in Gilton and Mercado's bedroom. *See United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (concluding that there was sufficient evidence of constructive possession where the firearm was found in a bedroom shared by the defendant and his wife). Gilton can argue to the jury that he was not the person who dog-eared the page, but that question does not make the page irrelevant. Instead, it includes a passage that refers to the blood of one who sins against the child, and Sneed was believed to be pimping Gilton's daughter. The page is relevant to show Gilton's state of mind and intent to kill Sneed.

Second, he argues that the act of dog-earing the Bible is nonverbal conduct that "reflects the actor's acceptance or belief in the relevance of the passage" and thus is inadmissible hearsay. The government counters that it offers the evidence not for the truth of the matter asserted but instead to show Gilton's state of mind. Nonverbal conduct is a statement under Rule 801 only if "the person intended it as an assertion." FED. R. EVID. 801(a). Gilton's argument that the act of

15

dog-earing the page was assertive conduct is farfetched.  In the only case Gilton cites in support of his argument, a court concluded that the action of gathering files was assertive conduct akin to pointing because it was done "in direct and specific response" to a request that she gather a certain kind of files.  *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1076 (W.D. Mo. 1985).  There is no comparison here.

Third, Gilton argues that Rule 403 and the "rule of completeness" requires that the page be excluded.  The rule of completeness applies "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988).  I cannot agree with Gilton that the passage will mislead the jury by suggesting that the Bible advocates revenge killings.  For the reasons set forth above, this motion is DENIED.

Finally, Gilton argues that the Bible page violates the best evidence rule and cannot be authenticated.  But the Best Evidence Rule provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003; *see also* Fed. R. Evid. 1001(e) (noting that "duplicate" includes photocopies "that accurately reproduce the original").  Further, to authenticate evidence the proponent need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

Gilton does not actually dispute that the photocopy is a genuine copy of the original Bible page or that the officer who discovered the Bible will be able to authenticate it.  Instead, he argues that the page cannot be authenticated because the officer altered it by highlighting it, and such highlighting unfairly draws the jury's attention to the damning passage.  I agree that the exhibit should not contain highlighting when it is offered.  The government should use a photocopy of the page without highlighting.  The motion is otherwise DENIED.

## I.    Allegations Regarding the Second Superseding Indictment

### 1.    Proving the Existence of an Actual Enterprise (Williams MiL No. 1)

Williams argues that the second superseding indictment "requires the enterprise to have been proven" in order for a jury to convict the defendants of count one.  The government counters

that the charged crime is *conspiracy* to conduct racketeering activity, and thus an enterprise need not have been formed. But the government adds that it "intends to prove the actual existence of an association in fact enterprise at trial." Accordingly, this motion is DENIED WITHOUT PREJUDICE. Defendants are free to re-raise this issue as necessary at the jury instruction conference or at any other appropriate time.

### 2. Maximum Exposure for Count One (Williams MiL No. 2)

Williams argues that the government cannot rely on a sentencing factor to enhance the statutory maximum exposure for count one if that factor was not alleged in the second superseding indictment. The government points out that the second superseding indictment alleges both murder and murder conspiracy, including with respect to Williams specifically. I agree. This motion is DENIED.

### 3. Second Special Sentencing Factor against Williams, A. Gilton, and B. Gilton (Williams MiL No. 3)

The defendants argue that I should strike the second charged special finding—the murder of Sneed—because it is improperly alleged. Specifically, the murder charge is untethered to the conspiracy, and thus a jury could find the defendants guilty of it without finding them guilty of the conspiracy charges. But as the government points out, the second superseding indictment ties the second special sentencing factor to the conspiracy in more than one way. First, it is listed under the caption "NOTICE OF SPECIAL SENTENCING FACTORS AS TO COUNT ONE," and count one is the conspiracy charge. 2SI 20:1. Although the first charged special finding repeated the conspiracy allegations, there was no need for the second special finding to do the same. In addition, the murder is listed as an overt act of the conspiracy. *See* 2SI ¶ 17cc. Finally, the government points out that the jury instructions and special verdict form will prevent the jury confusion the defendants predict. The second special finding is properly alleged; this motion is DENIED.

### 4. Sufficiency of the Conspiracy Allegations (Williams MiL No. 4)

Williams challenges the sufficiency of the conspiracy allegations in the second superseding indictment, arguing that "involve" is too vague to support a criminal conviction. The indictment

sufficiently alleges a conspiracy. This motion is DENIED.

**J.  Other Motions in Limine**

**1.  Jail Calls (A. Gilton MiL No. 2; Williams MiL No. 8)**

The defendants seek to exclude eight jail calls he made after being arrested on July 4, 2012. The government concedes that large portions of the calls are irrelevant and indicates that it does not anticipate offering any portions of the calls into evidence. The motion is GRANTED WITHOUT PREJUDICE to the government raising it de novo.

The defendants also seek to exclude all jail calls as unduly prejudicial because of the language defendants use. As I ruled before the first trial, the use of language the jurors might find offensive is not enough to make this evidence unfairly prejudicial. Omnibus Order 32. But without knowing the specifics of the calls the government seeks to introduce, I am not able to assess their relevance or their potential prejudice. This motion is DENIED WITHOUT PREJUDICE. Two days before the government introduces a call, the government shall provide defendants and me with the notice the specific statements it intends to introduce. One day later, the defendants shall give the government and me notice of any substantial evidentiary objections they intend to raise.

**2.  Reading the Indictment to the Jury or Sending it to Jury Room During Deliberations (A. Gilton MiL No. 1)**

A. Gilton asks me to follow the procedure from the first trial and not allow the indictment to be read to the jury or sent to the jury room during deliberations. The government suggests that the parties jointly prepare a summary to provide to the jury in lieu of the indictment itself but reserves its right to revisit the issue if the defendants open the door. The motion is GRANTED WITHOUT PREJUDICE to the government raising this issue de novo if it contends on the basis of the evidence that reconsideration is necessary.

**3.  Evidence Previously Suppressed (A. Gilton MiL No. 10)**

The defendants seek to prevent the government from using evidence that has been suppressed unless it becomes admissible for impeachment. The government does not oppose. The motion is GRANTED WITHOUT PREJUDICE to the government raising it de novo.

### 4. Advance Notice of Witnesses and Incidents (A. Gilton MiL No. 16)

The defendants ask that I order the government to provide the defense with weekly witness and incident lists rather than the two-day notice I ordered in the first trial and in the pre-trial order for the second trial. *See* Revised Pre-trial Schedule for Group 2 [Dkt. No. 1992]. Given the difficulty of managing the efficient presentation of this case so that the jury's time is not wasted, defendants' proposal is not reasonable; two-days' notice is sufficient time for the defendants to prepare for cross-examination. This motion is DENIED. In addition, the government shall notify Ms. Davis at least a day in advance of the identity of the anticipated witnesses.

### 5. Witness Exclusion from Observing the Trial (A. Gilton MiL No. 17)

The defendants ask that witnesses be excluded from the courtroom when they are not testifying. The government requests that case agents be permitted to sit at counsel table, which I will again allow. The government also reserves the ability to raise this issue again if any crime victims express an interest in attending portions of the trial. The motion is GRANTED with these caveats.

### 6. Overt Act hh (Elmore Second MiL No. 3)

Elmore seeks to limit testimony related to overt act hh, that he and another member of CDP were arrested after being found in a car with a 9 mm firearm and 11 rounds of ammunition. He argues that the government should not be permitted to reference the basis for the stop, which was a shooting in the Bayview neighborhood. The parties conferred and came to an agreement. Elmore will stipulate to the propriety of the traffic stop and will not elicit testimony about use of force by the police, and the government will not reference the shooting. This motion is GRANTED WITHOUT PREJUDICE to the government raising it de novo if the need arises.

### 7. Impeachment by Contradiction (Elmore Second MiL No. 4)

Elmore asks me to admit extrinsic evidence for the purpose of impeachment by contradiction if the need arises. The government agrees that extrinsic evidence is permitted for impeachment in certain circumstances. But this motion does not reference any specific testimony, incidents, or witnesses. It is DENIED WITHOUT PREJUDICE.

### 8. Evidence Relating to Michael Northcutt (B. Gilton MiL No. 3)

B. Gilton seeks to exclude evidence relating to Michael Northcutt in order to avoid conflict for his attorney, who previously represented Northcutt. The government responds that the parties met and conferred, and there does not appear to be a conflict at this time. Because the parties merely wanted to bring this issue to my attention, a ruling is not necessary at this time.

### 9. Items and Indicia Uncovered during Searches (Williams MiL No. 14)

Williams seeks to exclude "indicia" and evidence from various searches on Rule 403 grounds. He specifically challenges evidence seized during searches of 1458 Grove Street and evidence of a gun and $6,810 found during his arrest. He has also filed a separate motion (Dkt. No. 2037) that addresses the sufficiency of the warrants for searches at 1458 Grove Street, on which I have not ruled. If I do not suppress the searches, I would not exclude the indicia. This evidence is sufficiently linked to the conspiracy charges against Williams, and it is not unfairly prejudicial. The motion is DENIED.

### 10. Admission of Rap Songs (Elmore First MiL No. 7)

Prior to the first trial, the group 1 defendants—which at that time included Elmore—moved to exclude evidence of rap songs CDP members wrote and sang, and the government moved to admit that evidence. I denied without prejudice the government's motion to admit the rap songs. Omnibus Order 8–12. I did allow the government to introduce Young's song *Strictly Pimpin'* during the first trial, which I ruled above will not be admissible against the group 2 defendants. *See supra* Section I. The government does not re-raise this issue; my prior ruling stands.

### K. Limited Use of Evidence (Elmore First MiL No. 8)

To the extent that any acts are subject to Rule 404(b), I will instruct the jury that any such evidence is admissible only against the defendant who engaged in the act. The specific instruction will be determined at the appropriate time. The same goes for statements admitted under certain hearsay exceptions.

## II. OTHER MATTERS

A few additional matters were discussed at the Pre-trial Conference on which I now rule:

1   
2    1.    Williams's motions to suppress (Dkt. Nos. 2036 and 2037) are too late.  The

3    cutoff, from my Order on April 13, 2015, Dkt.No.353, was November 23,

4    2015.  The motions are DENIED.

5   
6    2.    Lupe Mercado is severed from the trial on May 6, 2019.

7   
8    **3.**    The government is correct that offenses charged in an indictment may be

9    asserted in the conjunctive and proven in the disjunctive.  *See, e.g.*, *Young v.*

10    *Holder*, 697 F. 3d 976, 986, 987 (9th Cir. 2012) ("When the underlying

11    statute proscribes more than one act disjunctively, it is common for

12    prosecutors to charge in the *conjunctive*, yet it is well established that, to

13    prove such a charge, a prosecutor need only prove in the *disjunctive*—one

14    version of the crime. *Malta-Espinoza*, 478 F.3d at 1082. In

15    other  **[\*987]**  words, when a statute proscribes "A or B," a prosecutor who

16    indicts a defendant on a charge of "A and B" need only prove "A" or "B" in

17    order to achieve a conviction. *See United States v. Booth*, 309 F.3d 566, 572

18    (9th Cir. 2002) ("When a statute specifies two or more ways in which an

19    offense may be committed, all may be alleged in the conjunctive in one

20    count and proof of any one of those conjunctively charged acts may

21    establish guilt.").)  **The jury instructions shall so reflect.**

22   
23   
24    **IT IS SO ORDERED.**

25    Dated: April 26, 2019

26   
27    William H. Orrick
    United States District Judge

28