UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ALFONZO WILLIAMS,<br><br>  Defendant. | Case No. 3:13-cr-00764-WHO-1<br><br>**ORDER DENYING MOTION TO PROHIBIT TRIAL WITH CURRENT JURY PROCEDURES**<br><br>Re: Dkt. No. 2041 |

## INTRODUCTION

On May 6, 2019, trial is set to begin for defendants Alfonzo Williams, Antonio Gilton, Barry Gilton, and Reginald Elmore. On April 9, 2019, Williams[1] filed a motion to prohibit trial arguing that the District Plan for selecting jurors includes unconstitutional exclusions and the procedures violate the Sixth Amendment's fair-cross-section requirement. Both challenges fail. The plan, which mirrors 28 U.S.C. section 1865(b), is constitutional, and Williams has not met his burden to show a relationship between the selection process and any alleged underrepresentation of African American prospective jurors. Accordingly, I will deny the motion.

## BACKGROUND

Approximately every two years, the Clerk's Office for the Northern District of California creates a list of potential jurors from (1) registered voter records and (2) the California Department of Motor Vehicles lists of driver licenses and identification cards. Declaration of Liz Noteware ("Noteware Decl.") [Dkt. No. 2069-1] ¶ 3. After an automated process eliminates duplicate entries, approximately 200,000 individuals are randomly selected to be part of the Master Jury

---

[1] Antonio Gilton joins the motion. Dkt. No. 2042.

Wheel for the San Francisco/Oakland division. *Id.* A software program called JMS performs this random selection in proportion to each county's population. *Id.* The 2017 Master Wheel, from which jurors for this trial will be selected, was generated on May 10, 2017.[2] *Id.*

Every two weeks, the Clerk's Office sends a summons to a randomly selected portion of the Master Jury Wheel. *Id.* ¶ 4. The summons requires each prospective juror to complete a qualification questionnaire online or to call and request a paper questionnaire by mail. *Id.* If the summoned juror has not responded two weeks later, the office sends a second summons that includes a paper questionnaire in addition to another notification about the online option. *Id.*

In order to submit the qualification questionnaire online, prospective jurors must complete certain required field, including the question about their race. *Id.* ¶ 5. The Clerk's Office cannot exercise that same control over individuals' thoroughness in the event that they return the paper questionnaire. *Id.* If the prospective juror is disqualified pursuant to 28 U.S.C. section 1865(b), the office does not make further attempts to obtain race information from that individual. *Id.* ¶ 6.

If a summons is returned as undeliverable or if the prospective juror fails to respond to a second summons, the Clerk's Office retains that juror's zip code. *Id.* ¶ 8. Other individuals from that zip code will be selected to fill the next pool first. *Id.* With respect to non-responsive prospective jurors, the Clerk's Office used this zip code replacement method for as long as the 2017 Master Jury Wheel was used. *Id.* With respect to summonses returned as undeliverable, the method began in mid-2018 because of an error in capturing the zip code data. *Id.* ¶ 8 n.7.

**LEGAL STANDARD**

The Sixth Amendment and the Jury Selection and Service Act of 1968 guarantee litigants in federal courts juries that are "selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C.A. § 1861; *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975) ("[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial."). To make a prima facie showing that there has been violation of this requirement, a defendant must show:

---

[2] The 2019 Master Wheel was generated in April 2019. Noteware Decl. ¶ 3.

2

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). A party's ability to satisfy the *Duren* test raises a presumption of unconstitutionality, which the government can rebut by showing "a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process that result in the disproportionate exclusion of a distinctive group." *United States v. Rodriguez-Lara*, 421 F.3d 932, 940 (9th Cir. 2005), *overruled on other grounds by United States v. Hernandez-Estrada*, 749 F.3d 1154 (9th Cir. 2014) (internal quotation marks and formatting omitted).

## DISCUSSION

Williams challenges General Order Number 6, the District Plan for the selecting grand and petit jurors. *See* Motion ("Mot.") [Dkt. No. 2041] 3–5. He also argues that the jury selection procedures violate the Sixth Amendment and the Jury Selection Act. *Id.* at 6–10.

### I. INITIAL ALLEGATIONS

Williams first argues that the District Plan is unconstitutional because it disqualifies prospective jurors (1) who have not lived in the district for at least one year, (2) who are unable to speak English, (3) who have a physical infirmity, and (4) who have a pending felony charge or whose civil rights have not been restored after a felony conviction. *Id.* at 3–5. He acknowledges that the district plan "mirrors" the exclusions found in 28 U.S.C. section 1865(b). *Id.* at 3.

Williams cites no case in which a court has found the exclusions in section 1865(b) to be unconstitutional. The government raises a number of Ninth Circuit cases in which the court has upheld the same or similar requirements. Opposition ("Oppo.") [Dkt. No. 2069] 5–6; *see United States v. Ross*, 468 F.2d 1213, 1215–16 (9th Cir. 1972) (rejecting a challenge to this district's one-year residency requirement); *United States v. Okiyama*, 521 F.2d 601, 604 (9th Cir. 1975) (reversing and recommending dismissal of an indictment where there were "serious risks that those selected were not sufficiently proficient in English to understand the proceedings"); *Lyda v.*

3

*United States*, 321 F.2d 788, 791 (9th Cir. 1963) (noting it would be reversible error not to abide by the statute disqualifying someone incapable of serving as a juror because of mental or physical infirmities). Although the Ninth Circuit has not explicitly addressed the disqualification of individuals who have been convicted of a felony, it has addressed a challenge to a conviction where one juror had been convicted of a felony. *See Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1058 (9th Cir. 1997). Other circuits have upheld the exclusion. *See, e.g.*, *United States v. Arce*, 997 F.2d 1123, 1127 (5th Cir. 1993); *United States v. Foxworth*, 599 F.2d 1, 4 (1st Cir. 1979); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1224 (11th Cir. 2005). Williams's cursory challenge is not persuasive.

## II. FAIR CROSS-SECTION CHALLENGE

Williams next argues that trial with the current jury selection procedures will deny him his Sixth Amendment right to a jury drawn from a fair cross-section of the community because African Americans are underrepresented. Williams relies on the declaration of John Weeks to assert that there is a statistically significant disparity between the number of African Americans in the community and the number that qualify for jury service.[3] Mot. 7; *see* Declaration of John Weeks ("Weeks Decl.") [Dkt. No. 2041-1]. Williams argues that this disparity stems from the failure to follow up on the high non-response rate in African American communities. Mot. 8.

Even assuming that Williams can show an underrepresentation of African Americans on petit juries in the Northern District,[4] he has not met his burden to show that it is "due to the *system* by which juries [are] selected." *Duren*, 439 U.S. at 367 (emphasis in original); *see Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1141 (9th Cir. 2004) (noting the defendant's failure to

---

[3] Weeks compared the qualified jurors from the San Francisco/Oakland division (using the 11/16/2018 AO-12 forms provided by the Clerk's Office) to the census data for the 2016 five-year data period. *See* Weeks Decl. ¶¶ 5, 8. Using the comparative approach (which Williams argues is appropriate here), Weeks found a disparity of 44%. *Id.* ¶ 14; *see* Reply 3.

[4] This is far from a foregone conclusion. The Ninth Circuit no longer exclusively relies on absolute disparity, *see United States v. Hernandez-Estrada*, 749 F.3d 1154, 1164–65 (9th Cir. 2014), but it has also raised questions about Williams's desired test of comparative disparity, *see id.* at 1163 ("However, one problem with the comparative disparity test is that it can overstate the underrepresentation of a group that has a small population percentage.").

show a relationship between the underrepresentation and the manner in which jurors were selected). Williams asserts that "the high non-response rate is disproportionately concentrated in African-American communities," citing Weeks's opinion that 12 zip codes with a larger Black population also have a higher-than-average non-response rate.[5] Mot. 8; Weeks Decl. ¶ 23; Reply 4 (noting "the real issue is the zip code disparity in non-responses"). Williams asserts that while the District Plan "contemplates" follow up, that follow up is not in fact occurring. Mot. 8.

Far from showing systematic exclusion, the record before me indicates that the Clerk's Office takes affirmative steps to mitigate precisely the concerns Williams lays out. First, it sends an additional summons to anyone who does not respond to the first. Noteware Decl. ¶ 4. Second, it captures the zip codes of two groups of people—those who fail to respond to the second summons and those whose first summons is returned as undeliverable. *Id.* ¶ 8. Future pools fill with individuals from those zip codes first. *Id.* By sharp contrast with a system that excludes these zip codes from the selection process, the Clerk's Office has designed a system that seeks to ensure—to the extent possible—proportionate representation from all zip codes in the district.

By asserting that "it is statistically highly unlikely [zip code replacement] is actually occurring," Williams is essentially arguing that the disparity evidence alone can serve as evidence of the relationship between that disparity and the district's jury procedures. *See* Reply 4. Not only does a sworn declaration belie Williams's contention, but statistical evidence alone is insufficient without any evidence tying it to some aspect of the selection *system*.[6] Finally, Williams asserts that he needs more data in order to be able to mount a successful challenge. Mot. 5, 8–10. But the record before me indicates that Williams has been provided with race data for all of the individuals who returned questionnaires (13.99% of whom did not identify their race) along with all qualified jurors (1.39% of whom did not identify their race). *See* Oppo. 12; Noteware Decl. Ex. B. For the

---

[5] The government points out that because there is no race data for non-responsive summoned jurors, Williams has not shown that African American prospective jurors are in fact the non-responders. Oppo. 10. The 58% figure from Weeks relies on zip codes with a 20% African American population as compared to those with a 7% population. *See id.*

[6] I additionally note that the zip code replacement efforts by the Clerk's Office likely go above and beyond the constitutional floor.

5

reasons stated above, additional data cannot fix this motion's deficiency.

Although the Clerk's Office does not have control over whether people respond to the jury summonses it sends, the record before me reflects efforts to secure a high response rate and to ensure that non-responses do not impact the zip code representation of the resulting pool. Assuming without deciding there is a disparity, Williams has not met his burden to show it is systematic.

## CONCLUSION

For the foregoing reasons, Williams's motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 3, 2019

William H. Orrick
United States District Judge