JOHN R. GRELE (Bar. No. 167080)
LAW OFFICE OF JOHN R. GRELE
1000 Brannan St., suite 400
San Francisco, California 94110
Telephone: (415) 665-8667
Facsimile: (415) 484-7003
jgrele@earthlink.net

Attorney for Defendant
ALFONZO WILLIAMS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>ALFONZO WILLIAMS,<br><br>Defendant. | CASE NO.  CR-13-0764-WHO<br><br>**DEFENDANT ALFONZO WILLIAMS'S SETENCING MEMORANDUM; DECLARATIONS AND EXHIBITS**<br><br>Date: Oct. 4, 2019<br>Time: 1:30 pm<br>Court: Hon. William H. Orrick |

    Mr. Williams has pleaded guilty to participating in a racketeering conspiracy (Count 1) and use of or aiding and abetting use of a gun in the murder of Calvin Sneed (Count 4).  The agreement is made under Federal Rule 11(c)(1)(C) for a term of 25 years, with 5 years of supervised release. Mr. Williams has expressed true remorse for his involvement, and respectfully requests the Court accept the plea and impose the agreed-upon sentence.

    Mr. Williams does have some objections and requests relating to the Presentence Investigation Report (PSR).

    Mr. Williams also requests the Court recommend a placement in the Bureau of Prisons as close to San Francisco as possible.

A.  **The Plea is Appropriate**

Mr. Williams agrees with the probation officer's recommendation that the factors in 18 U.S.C. §3552(a) warrant a sentence outside the Guidelines range and that 25 years is appropriate. Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall v. United States*., 552 U.S. 38, 49 n.6 (2007).

There is no doubt the killing of Mr. Sneed, or aiding and abetting it, is a serious matter, as is Mr. Williams's participation in a RICO conspiracy by drug dealing, possessing firearms, and attending meetings where activity is discussed. *See* 2114, Plea Agreement, at 3, ¶2(c) and (d). But, it is also true that 25 years imprisonment is a very serious sentence.

In addition to those facts discussed in the PSR (¶¶79-90, 96-97; Recommendation, page 2) Mr. Williams requests the Court include the following:

1.  Mr. Williams and his close family were the victims of violence. In 1997, he was the victim of random violence in his community when he was shot, an event that altered his ability to play basketball, which was a significant event for him. He was raised with Frederick Maye in his grandmother's home. In 2011, Mr. Maye was killed.

2.  Mr. Williams has demonstrated continued growth and a significant and positive presence in his children's lives while incarcerated. He has been able to assist their mother in parenting, and frequent visits with their father have been a positive contribution to their growth and development. *See* Statements of Jovan Frasier, Vontre Williams and Amari Williams.

B.  **Objections to the PSR**

1.  **The Sneed Homicide: Descriptions of Other's Roles and Additional Motives**

Mr. Williams objected to the language in the PSR on the same bases as A. Gilton. That objection was:

1.  Page 13, ¶38, last 2 sentences to the effect that others "being involved with CDP", and the last sentence in its entirety that characterizes the pimping by Sneed as considered a significant sign of disrespect to others and to CDP.

2.  Page 13, ¶40, that another person was inside the car with the two defendants.

3.    Page 13, ¶40, the last 2 sentences, beginning with "Barry" and ending with "associates."  This includes multiple motivations not described in the plea.

Mr. Williams requests the Court adopt the factual basis for the plea – that he was in the car and that a substantial purpose to murder Sneed, or aid and abet that murder, was to enhance and maintain his position in CDP.  Moreover, Mr. Williams requests the Court include the fact that another purpose was to come to the aid of L.G., a long-time friend of Mr. Williams.  This is a position he took in the interview and is supported by the long-standing relationship between Mr. Williams and his entire family with Mr. Gilton and his daughter, which is reflected in statements by L.G.  He knew L.G. ever since she was born.

This would avoid expanding the report to make findings regarding activities by a co-defendant awaiting trial, who is only described as "more likely than not involved" (PSR 29), and motives that were not adopted by Mr. Williams, were not established by any direct evidence, and which depend upon multiple layers of inferences. While there was Trial 1 discussion of what generates "respect" within CDP, and some testimony regarding disrespect involving a chain incident, Mr. Williams is unaware of testimony that pimping out a CDP member's daughter was considered a sign of disrespect, or that such disrespect was expected to or would result in a shooting.   These seem to be questions better suited to resolution at the upcoming trial.

Moreover, the PSR may put the Court is a difficult position vis-à-vis the pending trial.  It unnecessarily risks presuming guilt and participation, and a significant expansion of purpose, and may impact on claims of a fair trial by those defendants.

**2.    Descriptions of Involvement**

PSR pp.15-16, ¶48, and Recommendation Justification: that Mr. Williams, together with others, participated in several criminal activities in furtherance of the CDP gang.  The enterprise involved (listing acts).

These descriptions imply Mr. Williams's involvement in acts that he had nothing to do with. Mr. Williams pleaded guilty to participating in a conspiracy that involved multiple acts by others that are described in the PSR (¶¶20-37, 39, 41-47, 48(a)-(o)), and as to which he was not personally involved.  While it may be appropriate to describe these acts by others in a PSR, it is inappropriate

to attribute these acts to him, or to imply such attribution.

### 3. Minor Corrections

P. 4: Mr. Williams Legal Address is not "homeless in San Francisco." His legal address since incarceration is 1458 Grove St., in San Francisco.

p. 22, ¶82: Mr. Williams's grandmother's garage was not furnished with a TV or card table until sometime much later than his childhood years. It was likely sometime in 2010 or 2011.

## C. Sentencing Recommendations

<u>No-contact provision</u>. It should be clarified this is a provision that applies as a condition of supervised release. Further, Mr. Williams has long-standing friendships with the Gilton family that span his entire life. Finally, Mr. Williams questions the utility of such provisions because it will be many, many years before he is even on supervised release. The likelihood of such contacts having any deleterious effect is quite minimal.

<u>CDP associations</u>: the plea agreement was revised to state that Mr. Williams shall not associate with any active gang members. Plea, ¶9.

## D. Restitution Issues

The Government seeks to delay a restitution proceeding. Mr. Williams respectfully objects.

Generally, if the Government needs more time for a restitution proceeding, it needs to request that at least 10 days prior to sentencing. 18 U.S.C. §3664(d)(5). In addition, the plea agreement is that Mr. Williams agrees to restitution set "at the time of sentencing." Plea, ¶10. While Mr. Williams did agree to have the Court determine restitution, Mr. Williams did not waive any rights to contest whatever showing is made and to offer contrary proofs. Thus, he had a Due Process right to challenge any showing, and a right to do so under Rule 32.

Should the Government be permitted to extend the proceedings and offer evidence of loss, Mr. Williams will determine what objections or hearings are appropriate, and will then address the questions of the Court's discretion to consider economic circumstances given the statutory mandate; the schedule for payments under 18 U.S.C. §3664(f); and apportionment issues.

///

///

Date:   September 23, 2019                              Respectfully submitted,


  /s/  John Grele
JOHN R GRELE
Attorney for Defendant,
Alfonzo Williams