UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALFONZO WILLIAMS,<br><br>　　　　Defendant. | Case No. 13-cr-00764-WHO-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Alfonzo Williams has moved for compassionate release. He has served approximately 9 years of the 25-year sentence to which he agreed in a Fed. R. Crim. P. 11(a)(1)C) plea agreement that I accepted at sentencing following his admission of guilt to Racketeering Conspiracy and Use of a Firearm Causing Death or Aiding and Abetting, including participating in the murder of Calvin Sneed. Mr. Williams argues that he deserves release from FCI Big Spring because he suffers from hypertension, obesity, a history of heavy smoking, and pre-diabetes, and that those medical risk factors are combined with his being African American and being incarcerated in a prison facility that puts his health at further risk because of inadequate precautions; all of this puts him at substantially greater risk of contracting COVID-19 than if he was not incarcerated. He previously contracted COVID-19 at FCI Big Spring and experienced symptoms, including not being able to get out of bed, but never saw a doctor despite his complaints.

I have the authority to grant Mr. Williams's motion if, after considering the factors set out in 18 U.S.C. § 3553(a), I find that there is an extraordinary and compelling reason to warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission (which are not binding but may inform my discretion). 18 U.S.C.

3582(c)(1)(A); *United States v Aruda*, 993 F. 3d 797, 802 (9th Cir. 2021). I decline to do so here.

I considered the 3553(a) factors when I sentenced Williams to 300 months in custody followed by five years of supervised release on November 7, 2019, twenty months ago. In his plea agreement, he admitted to being an active member of the Central Divisadero Playas (CDP) from at least 2000 through July 2012, and stated:

> I knowingly and intentionally participated in the racketeering conspiracy charged in Count One of the Second Superseding Indictment by, among other things, trafficking controlled substances, including cocaine base, possessing firearms, attending CDP meetings and gatherings with other CDP members where we discussed the gang's criminal activities and objectives, and participating in the murder of Calvin Sneed (described more fully below). I engaged in the foregoing activities to maintain and increase my position in the CDP enterprise.

Alfonzo Williams Plea Agreement [Dkt. No. 2114] ¶ 2(c). Evidence of CDP's criminal activity was the subject of a four months-long trial of five other members of CDP, during which I heard testimony about several murders, burglaries, assaults, prostitution, and drug dealing involving CDP members, including Mr. Williams. To underscore the seriousness of some of these crimes, I note that the law required that I sentence two of those members to life without the possibility of parole.

Obviously, the conduct to which Mr. Williams pleaded guilty was extremely serious. At sentencing, I recognized that he had a difficult childhood, a positive relationship with his children and their mother, and had been an accomplished basketball player before he was shot. Mr. Williams chose not to allocate at sentencing. In light of the very serious nature of the crimes to which he admitted, I did not disturb the parties' agreement to the length of the sentence, which I determined was sufficient but not greater than necessary to fulfill the purposes of sentencing.

Mr. Williams attached to his motion for compassionate release letters from his sons, their mother, and his cousin. I recognize the hardship imposed by Mr. Williams's incarceration on his family, and I am sorry about that impact on innocent family members. The reason Mr. Williams received that lengthy sentence, of course, was what he did between 2000 and July 2012, and his agreement to the sentence that I had to accept or reject in full.

2

My analysis of the 3553(a) factors today is as it was when I sentenced him. Of course, Mr. Williams has now served nine years in custody instead of the seven he had served at the time of sentencing. He has not had any disciplinary actions in prison. But in light of the seriousness of the offenses, which he admitted occurred over a twelve-year period and only stopped with his arrest, I cannot find that he is rehabilitated or would not be a danger to the public if released, even though I hope that is the case. Consideration of the 3553(a) factors leads to the conclusion that Mr. Williams should not be released now.

Turning to whether there is an extraordinary and compelling reason to grant Mr. Williams's motion, I find that there is not. He does have a number of medical impairments. While none separately appears to be life-threatening, I assume for purposes of this motion that the combination of them puts him at higher risk than the general population to catch COVID-19, and that being African American and living in a congregate setting in prison increases that risk in a material way.

That said, Mr. Williams has chosen not to get vaccinated. He has that right, to be sure, and I recognize that many inmates, among others, have made that choice. But I find his choice perplexing, particularly given the concerns he has expressed about the conditions at FCI Big Spring, his evident love of his sons and the scientific evidence that the vaccines are effective in preventing a vaccinated person from catching COVID-19, let alone contracting a serious case of it.[1] We continue to learn more about COVID-19, its variants, and the effectiveness of various vaccines, but it is indisputable that taking the vaccine provides far greater protection for the individual and those who come into contact with him than not doing so. Dr. Anthony Fauci said on Meet The Press on July 4, 2021 that 99.2% of the patients who died from COVID-19 in the United States in June 2021, were unvaccinated. NBC News, *Meet the Press* (Jul. 4, 2021), https://www.nbcnews.com/meet-the-press/meet-press-july-4-2021-n1273065. Reports around the country show that more than 90% of the hospitalized

---

[1] I note that Mr. Williams says that he would take the vaccine if someone would answer his questions about it. He was apparently offered the vaccine on March 30, 2021. I urge him to seek and obtain whatever information he needs, for the benefit of himself, his family, and those who live and work near him.

3

patients with COVID-19 are not fully vaccinated. AP News, *Nearly all COVID deaths in US are now among unvaccinated* (Jun. 29, 2021), https://apnews.com/article/coronavirus-pandemic-health-941fcf43d9731c76c16e7354f5d5e187.

Accepting for purposes of this motion that Mr. Williams has all of the risk factors he has described, that conditions at FCI Big Spring exacerbate the possibility that he will again catch COVID-19, and that his prior bout with it will not provide adequate protection, his refusal to be vaccinated (when the evidence is that having had COVID-19 plus being vaccinated materially increases one's immunity) undercuts the basis of his motion. *See* Johns Hopkins School of Public Health Expert Insights, *Why COVID-19 Vaccines Offer Better Protection Than Infection* (May 28, 2021), www.jhsph.edu/covid-19/articles/why-covid-19-vaccines-offer-better-protection-than-infection.html ("Studies have shown that people who have been infected can benefit significantly from vaccination. It gives them a strong, lasting immunity boost."). For one thing, if he took the vaccine, he would be protected from the purportedly extraordinary and compelling medical reasons for which he seeks release. On the flip side, if he remains unvaccinated and is returned to home confinement, there would remain a significant chance that he could still contract COVID-19, and even if he is asymptomatic he could pass the disease on to others, including his family.

Mr. Williams points out that if I adopt the analysis above, his choice not to take the vaccine means that his opportunity for compassionate release is foreclosed (either he takes it, and the basis of his motion falls away, or he doesn't, and I hold that because he had the option to do so, his motion fails). That simply emphasizes a central weakness of his motion. I do not hold that compassionate release cannot be granted to an inmate who refuses the vaccine. But I do find that Mr. Williams's refusal to be vaccinated cannot assist him in getting released early.

In short, I find that there is not an extraordinary and compelling reason to release Mr. Williams. While I acknowledge his risk factors, which in combination do put him at higher risk to catch COVID-19 than the average member of the public, his decision not to be vaccinated undercuts his motion. He has served about 36% of the time to which he agreed to

4

be sentenced, and reconsideration of the 3553(a) factors I analyzed twenty months ago does not suggest a significantly changed circumstance. I am quite familiar with the evidence the government has put on at trial in two cases regarding the actions of CDP and the murder of Calvin Sneed. The seriousness of the offenses militates heavily against compassionate release. Serving the sentence to which Mr. Williams agreed will result in his serving a sufficient, but not greater than necessary, amount of time in custody to satisfy the purposes of sentencing.

**IT IS SO ORDERED.**

Dated: July 13, 2021

William H. Orrick
United States District Judge